## McLEOD, ET AL. v. McDONNEL AND WIFE.

1. A testator made his will in these terms : " That all my property, both real and personal. of which I am now possessed, or may hereafter accrue, be retained and continued together, till my youngest child may have arrived at lawful age ; at which time all the above property, with its increase, from now on to the time of my youngest child arriving at lawful age, to be equally divided among all my lawful heirs." His property consisted of lands, slaves, stock, plantation utensils, &c. He died leaving a widow and five infant children. Held, that the intention to be gathered from these expressions, in connexion with the circumstances, is, that the family relation between the wife, children, and slaves, shall be continued, and that the plantation be carried on for the benefit of the family. The wife, under this will, takes a vested interest in one-sixth part of the estate, to be divided at a future period.

2. The provision for the wife is inconsistent with dower and distribution of the same estate, consequently, without any express legislation upon the subject, she would, in equity, be put to her election.

3. The only change of law, made by our statute, which requires a widow to signify her dissent from the provision made for her by her husband's will, is to introduce a determinate period, within which she must signify her dissent, or else the provision, if in equity, a bar of dower, becomes absolutely a bar at law.

4. When application is made for an allotment of dower, and distribution of the personal estate, to the County court, which has possession of the will by probate, and the will is inconsistent with such claim, there is a defect of jurisdiction in the court to act upon the petition, unless the fact of dissent from the will, is shown affirmatively.

WRIT of error to decree of the judge of the country court of Wilcox county on a petition for dower.

The case made in the petition is this : Angus McIntosh, in his

lifetime, intermarried with the petitioner, Janet, (who, after his death, intermarried with the petitioner, McDonnel;) and, during the coverture, and at the time of his death, was seized in fee of certain lands described in the petition; also, of certain slaves and other personal chattels McIntosh died in 1838, leaving four children surviving, all of whom are minors. Previous to his death, he made and published a will, in which he made no express provision for his wife. This will was admitted to probate, and Alexander McLeod and the petitioner, Janet, were appointed as administrators with the will annexed. She intermarried with McDonnel in 1843, and he thereby, in right of his wife, became a co-administrator with McLeod.

The prayer is, that dower of one-third part of the lands may be allotted, and a distribution of one-fifth of the personal estate.

This petition was filed in July, 1843, and citations were ordered to be served on the co-administrator, McLeod, as well as the infants. After service, a guardian *ad litem* was appointed for the minors; and the defendants demurred to the petition, which, being overruled, they pleaded as follows:

1. The minors, by their guardian, objected, that the prayer of the petition ought not to be granted, because the said Janet did not, within four years after the probate of the will of McIntosh, dissent therefrom; and because the said Janet is therein provided for according to the act of assembly, and has acquiesced in the provisions thereof for more than five years.

Upon this, issue was taken.

2. The administrator objected, that by the provisions of the will of McIntosh, his estate was to be kept together until his youngest child should be of age, which period has not elapsed ; and that the said Janet acquiesced in the will for more than four years; also, that the estate has not yet been settled, there being outstanding debts unpaid.

The petitioners demurred to this plea; but the demurrer being overruled, they then replied :

That there was money, choses in action, and other personal effects more than sufficient to pay and satisfy the outstanding debts beyond the property described in the petition.

The defendant demurred to this replication; but, it being overruled, issue was taken.

No jury trial was demanded, and the issues were all determin-

ed by the court in favor of the petitioners, and a decree rendered for the appointment of commissioners to set apart and allot dower of one-third part of the lands; and to distribute one-fifth part of the personal estate.

In the course of the investigation, but not until after the petitioners had closed their case, the will was offered to be read by them. The defendants objected to the reading of it then, and excepted to the decision of the court overruling their objection. The will is in these terms:

I, Angus McIntosh, do constitute and make this my last will and testament, as follows: That in the first place, all my lawful and just debts be paid. 2nd. That all my property, both real and personal, of which I am now possessed, or may hereafter accrue, be retained and continued together till my youngest child may have arrived at lawful age; at which time, all the above property, with its increase from now on to the time of my youngest child's arriving at lawful age, to be equally divided among all my lawful heirs. In witness, &c , executed on the 1st January, 1838, in the presence of three witnesses, and admitted to probate 29th same month.

The several matters determined by the judge of the county court, are now assigned as error.

BETHEA, for the plaintiffs in error.
SELLARS, contra.

GOLDTHWAITE, J.—Before entering upon the consideration of our statutes which define the right of the widow to dower in the real, and distribution of the personal estate, and compels her to elect between the will and legal provision, it is proper to consider whether the will before us makes any provision for the widow; and if it does, whether it was intended or has the effect to bar her claim to dower and distribution, or to put her upon an election.

1. In the construction of a will, the great object to be ascertained is the intention of the testator; and, when discovered, that will always prevail, if not inconsistent with the rules of law. The clause of the will of which the intention is to be ascertained, is this: "That all my property, both real and personal, of which I am now possessed, or may hereafter accrue, be re-

tained and continued together till my youngest child may have arrived at lawful age; at which time, all the above property, with its increase from now on to the time of my youngest child arriving at lawful age, to be equally divided among all my lawful heirs." To ascertain the general intention of a testator, when his will is not clearly expressed, we apprehend it is perfectly legitimate to look at the condition of his family, the nature and description of his property, and even the state of society where he has had his residence. Here, there is no express provision made for the support of his wife or children; but we are not to infer from its absence that no such provision was intended. He directs his property to be *retained* and *continued together*. This property, besides real estate, consists of slaves, stock and plantation utensils; so that the selling, or even hiring out seems to be inhibited. He does not provide that the property shall accumulate, but directs that all of it, with its increase, a term perfectly familiar to all, shall be divided at a future day. His children, five in all, are minors, in 1843; so the presumption is, that in 1838, when the will was made, some, and, perhaps, the most of them, must have been of a tender age. With these expressions, connected with these circumstances, his general intention cannot be misunderstood. It was, that the family relation should be continued between his wife, children and slaves, and that his plantation should be carried on for the benefit of his family. In no other manner can the expressed direction to *retain and continue the property together*, be carried out, unless we suppose the absurdity of keeping slaves and stock, without using them.

The intention is clearly expressed, that his real and personal estates shall go to the same persons; and, when reference is had to the general intention of the testator, it leaves no reasonable doubt that his wife was intended to be included in the general term *lawful heirs*. It is possible that, if this was a devise of real estate only, the proper construction of this term, uncontrolled by the obvious intention that there should be no division of the estate, would be to confine it to the heirs at law; but when it is used with reference to the personalty, it means next of kin, unless this meaning is controlled by the context; because the next of kin are the only persons appointed by the law to succeed to personal property. [Holloway v. Holloway, 4 Vesey, 649; Lowndes v. Stone, 5 Vesey, 403; Vaux v. Henderson, 1 J. &

W. 386.] Here, the testator uses the term, lawful heirs, in the same sentence where he fixes the period for distribution; and apparently endeavors to give point to it by prefixing *all*, as if to indicate that *all my children* would not convey his meaning. Independent of the strong presumption arising from the use of the words *lawful heirs*, instead of children, another springs out of the entire omission of a provision for his wife, or any reference to her legal claims; because it is utterly inconsistent with common experience that the testator could have supposed that *all* his estate, real as well as personal, could be kept together unless a satisfactory provision was made for his wife by his will. The expressed intention, that all the property shall be retained and continued together, coupled with the use of a term which includes all the distributees, is conclusive that his intention was to provide for his wife in the same manner and to the same extent as each of his children.

The only doubt we have had of the correctness of this construction, was, that on the first reading of the will, it seems to convey the idea that the estates of those entitled to the personal property was not to vest until the youngest child became of age; in which event, the children and widow would have no present interest in it, but the estate would vest in and be divisible between such persons as should then answer the description of lawful heirs. Independently of the fact, that such a construction is directly counter to what we have ascertained is the general intention of the will, it would defeat the particular and expressed intention that the personal and real estates should go to the same persons. It is said, a bequest of personal estate to a person when he becomes of age, or to several, to be divided among them at a particular period, does not vest until the period arrives; and that there is a difference in this respect in the construction of bequests and devises, growing out of the circumstance that courts of equity take their rules of construction from the civil law. [Machen v. Reynold, 14 East, 601; Hanson v. Graham, 6 Vesey, 239; Stapleton v. Cheales, Pre. Chan. 317.] But a devise in the same terms vests an immediate interest. [Goodtitle v. Whitley, 1 Burr. 228.] The rule of the civil law, with respect to bequests, only applies, however, when there is nothing in the context of the will to explain the intention; and, therefore, a direction to apply the interest of the fund bequeathed, has been held a sufficient in-

dication of the intention to vest the legacy immediately. [Fonereau v. Fonereau, 3 Atk. 645; see other cases to the same effect, 1 Roper on Leg. 388.]

From what has been said, it will be apparent that our conclusion is, that under the will the widow took an absolute vested interest in one-sixth part of the testator's real and personal estates, to be divided at a future period. No question is raised as to the extent of her present interest in the income derived from the labor of the slaves on the plantation; and, therefore, no opinion is given on that subject.

2. We are next to inquire, if this provision in the will is inconsistent with the legal right to dower and contribution, and was intended in lieu thereof. The rule in equity, which governed previous to any legislation on this subject, is, that to put the widow to the alternative of either waiving her interest under the will, or foregoing her right to dower in the lands of her husband, it must be clearly evinced that her taking both interests will defeat the general intent of the devisor. [Powell on Dev. 466.] Roper says, the rule, as settled by modern decisions, requires that, in order to deprive a widow of dower, it must be shown that the testator *intended to exclude her from it;* as, for instance, where there is an inconsistency between her claim of dower and the disposition of the estate by the will. [2 Roper on Leg. 414.] In Foster v. Cook, [3 Bro. C. 347,] Lord Thurlow held, that the widow ought not to be put to her election, but by express language, or an inference which was irresistible. What circumstances will authorize such an inference, is exemplified by many cases. Thus, in Villa Real v. Lord Galway, [1 Bro. C. 292,] there was a devise of an annuity to the widow for life. *All* the testator's estates were subjected to this annuity, and devised to trustees in trust to permit his daughter to receive *all* the rents. Lord Camden held the widow to an election, inasmuch as the allowance of dower would be inconsistent with the devise. So, in Chalmers v. Stovil, [2 V. & B. 222,] a devise of lands, in which the widow was entitled to dower, *to her and two others,* to be *equally divided* between them, was considered a case for election. Other cases of similar import might be cited, but these are satisfactory to show that the bequest and devise here of property, in which the widow was entitled to contribution and dower, to her and others, to be *all equally divided* between them,

31

makes her claim under the law inconsistent with the will, and raises an irresistible inference that it was not the testator's intention that she should have both. We have chosen rather to determine this point of the case upon equity principles, than to have reference to our statute; though under one very similar, in Virgina, it has been held, that the intention of the testator that the devise should operate as a bar of dower, might be shown by an averment *dehors* the will. [Ambler and Wife v. Nelson, 4 H. & M. 23.] But in this respect only, it is said, does the Virginia act vary the common law. [Herbert v. Wren, 7 Cranch, 370.] We have also forborne a consideration of an earlier statute, which declares "that the widow may, in all cases, waive the provisions made for her in the will of her deceased husband, and claim her dower, which shall be assigned her accordingly : in which case, she shall receive no part of such provision, unless it appears plainly by the will that the testator intended it in addition to her dower." [Clay's Digest, 172, § 1.] Whether this was intended to introduce a rule of construction different from that which previously obtained in equity, or was intended to relieve the widow from the consequences of an erroneous conception of her rights under the will, need not now be considered.

3. The question next in order is, whether, as a provision is made by this will for the widow, and intended in lieu of dower and contribution under the statute, she is compelled to abide by it, inasmuch as she has never signified her dissent from it either in the county or superior court of her residence. The words of the act, so far as they relate to this subject, are these : " When any person shall die intestate, or shall make his last will and testament, and not make therein any express provision for his wife by giving and devising to her such part or parcel of his real and personal estate as shall be fully satisfactory to her, such widow may signify her dissent thereto in the superior or county court, in the county where she resides, at any time within one year after the probate of such will; and then and in that case she shall be entitled," &c.—going on to declare she shall be endowed of one-third part of the real estate of which her husband was seized during coverture, for the term of her life; and one-half of his personal estate absolutely, after paying his debts, if there be but one child; a child's part, if there be less than four children; and one-fifth, if there be more. [Clay's Digest, 172, § 3.] Our impres-

sion at first was, that the term, *express provision*, was to be understood as directing an election only in case of a provision *expressing* to be in lieu of dower; but further consideration has satisfied us that the evil intended to be obviated was the difficulty which previously existed of ascertaining when and how an election was to be made by her. According to the course of equity law, the widow was entitled to an account before she was compelled to elect; and a suit in equity was frequently necessary to compel the election. This seems to be the only change made by the statute in the existing law—a fixed and definite term was introduced within which she is compelled to signify her dissent to the will; and if this is not made, it then, if any provision is made inconsistent with her right under the statute, becomes obligatory upon her. Such is the construction which similar enactments have received in Virginia and Kentucky. [Blunt v. Gee, 5 Call. 481; Shaw's Devisees v. Shaw's Heirs, 2 Dana, 341. See, also, Ex. of Green v. Green, 7 Porter, 19.]

4. The application of what has been said to the case before us, will show that the county court should have declined jurisdiction. The will of McIntosh was admitted to probate in that court in January, 1838, and letters testamentary granted upon it. It was thus, as a court of probate, in possession of the will, and no allotment of dower or distribution could be made as in case of intestacy, or if, as there was no provision for the widow, because such a course would be inconsistent with the will; and the jurisdiction could only be revived by causing it to appear that the widow had signified her dissent from its provisions within the year, in the manner provided by the act. The defect of jurisdiction appearing from the records of the court, the question was necessarily involved in the demurrer to the petition, which, in our opinion, ought to have been sustained upon this ground. The demurrer to the plea, by the administrator, that the estate had not been settled, would bring that point of the case within some expressions used by us in the case of Ex. of Green v. Green, [7 Porter, 19;] but, as the point was not raised in that case, and is not there decided, we choose to confine our present decision to the demurrer to the petition; and this the rather because the influence of the statute which authorizes distribution of an estate after eighteen months, [Clay's Digest, —.] was not then considered.

The result of our opinion is, that the judgment of the county court must be reversed.