## McLEMORE, ET AL. v. McLEMORE, ADM'R.

1. A testator devised the residue of his estate, as his executors thought proper, to his wife, to rear and educate his children, during her life, and proceeds: "As the balance of my children come of age, I will that they receive such a part, of their part of my estate, as my executors shall think proper to give them at that time. Also, I will, that when my daughter, Eliza McLemore becomes of age, and marries, that she receive a part, of her part of my estate as the executors may think proper. I will when my youngest child comes of age, or my wife should marry, then in either case, I will that there be a division take place between my wife, and my children, and each one share an equal part of all my estate." Finally, he declares, "I will, at the death of my wife, all my children to share all my estate equally." Held, that these legacies were vested, the enjoyment of them being postponed until the contingencies happened.

2. One of the legatees having died before the contingency happened, leaving one child by a former wife, and three others by a subsequent marriage,

and two of the last children having also died: Held, that the portion of the
two last children, in their father's legacy, would descend to their sister of
the whole blood, to the exclusion of the remaining sister of the half blood.

Error to the Orphans' Court of Montgomery.

This proceeding was a motion by Moses McLemore, adm'r,
for distribution of two slaves among the distributees of his intes-
tate, William McLemore. It appears that the slaves to be dis-
tributed, came by the will of James McLemore, the father of Wil-
liam. That William McLemore, at his death, left a widow and
four children—one, Mary, by a former marriage, and three by
the last marriage, two of which have died, leaving one, Evelina,
surviving. It further appeared that William McLemore died
before the youngest child of James McLemore arrived at the
age of twenty-one years. The will of James McLemore was
also in evidence, but need not be here set out, as it is sufficiently
described in the opinion of the Court.

The Court held, that the two slaves were to be equally *divided*
between the two surviving children of William McLemore, and
directed distribution accordingly; from which this writ is prose-
cuted, and which is now assigned as error.

Hayne & Elmore, for the plaintiffs in error, contended, that
William McLemore took a vested interest in the slaves, under the
will of his father. [6 Vesey, 239; 6 Porter, 507; 5 Ala. Rep.
143; 6 Id. 236; 3 Murphy, 318.] That the interest having vest-
ed in him, at the death of his father, James McLemore, descend-
ed to his heirs at law, and having died before the contingency
happened, upon which it was payable, descended to his heirs at
law—and that the estate would go to the child of the whole blood,
under the statute of distributions.

Belser, contra, argued, to show, that by the provisions of the
will of James McLemore, it was clear the property not divided
by his will, was not intended to vest, until the youngest child
came of age. That as this event did not happen until after the
'death of William McLemore, the property vested in him, and
that his share will be equally divided among all his children equal-
ly, whether of the whole or half blood, who will take directly

from their grandfather, and not through their father. That grand children may take under the term children, he cited 4 S. & P. 286. Upon the construction of the will, he cited 6 Porter, 21, 507, 523 ; 11 Wend. 259 ; 4 Hawks, 227 ; 6 Vesey, 239 ; 6 Ala. Rep. 236 ; 14 Vesey, 389 ; 3 Murphy, 318 ; 14 Pick. 318.

ORMOND, J.—The question to be decided in this case arises under the will of James McLemore, and is, whether his children took an absolute vested interest in that portion of his estate, or whether it was contingent, and not to vest until the period appointed in the will for its distribution.

The general rule upon this subject is, that where the time annexed to the payment of the legacy, is of the substance of the gift, as a bequest to A, *when* he attains the age of twenty-one years, it does not vest until the contingency happens. This rule, however, like all others adopted for the purpose of expounding wills, yields to an intention inferrible from other parts of the will, that it was to vest immediately. As where the interest is to be paid in the mean time to the legatee. [Fonnereau v. Fonncrean, 3 Atk. 644 ; and see also, Marr, Ex. v. McCullough, 6 Porter, 507, and McLeod v. McDonnel and wife, 6 Ala. Rep. 236, where this question was elaborately discussed, and the authorities considered.

There is indeed no difficulty in ascertaining the rule, which is well settled, but in making the application of it to the particular case. We are then to ascertain, if possible, what the testator meant. He first gives such of his estate as remains, and as his executors think proper, to his wife, to rear and educate his children, during her life. He further provides for specific bequests to some of the children, and proceeds, "as the balance of my children become of age, I will, that they receive such a part, of their part of my estate, as my executors shall think proper to give them, at that time. Also, I will, that when my daughter Eliza becomes of age and marries, that she receive a part, of her part of my estate, as the executors may think proper. I will, when my youngest child comes of age, or my wife should marry, then, in either case, I will that there be a division take place between my wife, and my children, and each one share an equal part of all my estate. I also will, should any of my children die

87

without a lawful heir of their body, that part they receive from my estate, shall be equally divided among the balance of my children. And I will, at the death of my wife, all my children to share all my estate equally."

We think it is evident from the general conception, as well as from the particular expressions employed in this will, that the legacies were intended to vest immediately. The children were to be equally interested in all the property, but the immediate enjoyment of it was postponed, because it was considered necessary to preserve it as a fund for the support and education of the younger children. Yet, as it might not all be wanting for this purpose, the executors were invested with a discretion to pay over such portion of it as they might think proper, when the children severally came of age, which is significantly called " a part of their part" of the estate. Finally, when the youngest child came of age, or if the wife married again before that period, an equal division was to take place. The very term " division," implies an interest in the fund to be divided, nor can a doubt be entertained upon the entire will, that it was the intention of the testator that the legacies should vest immediately. The case of McLeod v. McDonald, 6 Ala. Rep. 236, in which the same conclusion was attained, was not near so strong a case as the present.

It appears, that William McLemore died before the contingency happened, upon which the division of the residue was to take place, leaving at the time of his death, a widow and four children. One, Sarah, by a former marriage, and three by the last marriage, of whom two have died, since their father's decease. It also appears, that two slaves having been received since the death of William, from the estate of James McLemore, the Court directed them to be equally divided between the two surviving children, supposing the legacy to William McLemore to be contingent, and that the children of James could inherit under the will, directly from their grandfather.

This order, it appears from the view taken, was erroneous. The legacy to William McLemore being vested, at his death, his interest in the residue of James McLemore's estate, passed to his widow and heirs at law, one fifth part to the widow, and the residue to his children. Two of these having died since their father, their share of their father's estate will pass to the surviv-

ing sister of the whole blood, to the exclusion of the sister of the half blood, as provided by the statute of descents, (Clay's Dig. 168, § 2,) which prefers the kindred of the whole blood in equal degree, to the kindred of the half blood in the same degree.

Let the decree of the Orphans' Court be reversed, and the cause remanded for further proceedings.