## MARTIN'S HEIRS *vs.* TENISON ET AL.

1. A bill in chancery, which was filed by the heirs-at-law of a decedent, seeking to hold the defendant a trustee for their benefit of the legal title to a certain tract of land to which (they averred) their ancestor had a pre-emption right at the time of his death, and to which the defendant, by fraudulently colluding with one of the heirs, afterwards acquired a patent,—*held* defective on demurrer, because it did not allege, 1st, that the time limited by the acts of Congress for their ancestor to make his entry had not expired when the defendant entered the land ; 2d, that complainants were able and willing to enter the land if it had not been entered by the defendant, or that they were prevented from doing so by his entry ; and, 3d, a tender of the money expended by defendant in making the entry, or a willingness and readiness on the part of complainants to re-pay it.

APPEAL from the Chancery Court of Cherokee.
Heard before the Hon. JAMES B. CLARK.

JAMES B. MARTIN, for the appellants.
MATTHEW J. TURNLEY, *contra.*

CHILTON, C. J.—The bill in this case contains no equity, and was properly dismissed by the chancellor on this ground. It is filed by the heirs-at-law of Samuel Martin, to have

Matthew Tenison decreed to hold the S. W. fractional quarter of section 36, township 9, range 10, east, in Cherokee county, as trustee for their benefit, upon the ground that their ancestor, the said Samuel, was entitled to a pre-emption of it under the acts of 1838 and 1840, in virtue of his having settled upon it in 1833, made improvements, and his continued residence down to his death in 1840, he being the head of a family and a citizen of the United States. It is averred, that after Samuel died, without having perfected his title by entry, his son, George A., administered, and without authority sold the pre-emption right, bought it in himself, and by an agreement with Thomas Tenison, in consideration of $1,000, sold it to Matthew Tenison, fraudulently agreeing to become a witness to establish it for the latter in the land-office ; that Matthew, in 1842, entered it under the act of 1841, (the said George testifying for him,) and soon after acquired a patent from the United States ; that the whole arrangement was fraudulent and void ; that said Matthew has had possession since his pretended purchase from George A. Martin. The bill then prays for an account of the rents and profits, and for a title to be decreed to the complainants, George being a party defendant with Tenison, the holder of the legal title. The demurrer for want of equity was sustained by the chancellor, who also passed upon the merits, holding that the complainants in neither aspect could recover.

The bill is defective in several particulars,—

1. It is not shown that the time limited in the acts for Samuel Martin to have made his entry had not expired before the land was entered by Matthew Tenison. In this event, Tenison could enter upon his own right of pre-emption, without invading any right of the complainants, or of their ancestor.

2. The bill fails to show any ability or willingness to enter the land, in the event it had not been entered by Tenison, or that they were prevented by his entry from doing so. It is said, we must presume the complainants would have accepted a benefit. How can we know it would have been beneficial to them ? It is not even so averred.

3. There is no tender of the money which Tenison expended in entering the land, nor any willingness or readiness averred by the complainants in their bill to pay it. It is

argued that the rents of the land are sufficient to pay for it. This is not averred in the bill.

The case of Johnson v. Culbreath, 19 Ala. 348, is cited as an authority for dispensing with this last averment ; but it is wholly unlike this case. There, an infant, who was one of several distributees, sought to have a re-division of some property which had been previously divided, but injuriously to him. No offer was made to account for the property he had received ; but this it was clearly competent for the chancellor to order—indeed, the prayer for a more equitable division was equivalent to an offer to deliver up the property to be divided.

In the case before us, the effort is to have Matthew Tenison declared a trustee. Suppose the court should do so, and, on taking the account, the improvements should equal the rents ; there is no offer to pay the money expended in making the entry, and, for ought the chancellor could know, there is no ability to pay ; for what does not appear, is as though it did not exist. The bill, then, would have to be dismissed, the complainants having speculated on the jurisdiction of the court. This is not permitted. It is an elementary principle in equity, that a person who seeks relief in a court of chancery must himself do what is equitable.—1 Story's Eq. Jur., § 64 c ; 1 Danl. Ch. Pr. 441, n. 4. It is, therefore, required in cases like the present, that the complainants should, by their bill, offer to pay whatever sum is admitted to be due to defendant, or to do whatever the court may consider necessary to be done on their part, towards making the decree which they seek just and equitable with regard to the other parties to the suit.—See same authorities. It is upon this principle, the courts of equity uniformly hold, that where a bill is filed to avoid usury, the complainant must pay, or offer by his bill to pay to the defendant, whatever sum is *bona fide* due to him; and if no such offer is contained in the bill, it is demurrable. 1 Story's Eq. Jur. § 301 ; 6 Gill & John. 103 ; 1 Paige 429 ; 5 Johns. Ch. R. 142-143 ; 1 Danl. Ch. Pr. 142-143, and n. 3 ; Nelson & Hatch v. Dunn, 15 Ala. 501-515.

Without noticing other objections made to the bill, these three are sufficient to sustain the chancellor's decree. It is therefore affirmed.