## COX'S ADM'R *vs.* McKINNEY.

32  461
116  271

[DETINUE FOR SLAVES.]

1. *Legacy held vested, and not contingent.*—A will in these words: "I give and bequeath all my personal estate to my beloved wife and children, to be equally divided between them, share and share alike, to them, their heirs and assigns, forever; and my will is, that each child shall draw their share as they come of lawful age or marry,"—creates a vested legacy in the children.

2. *Assent to legacy.*—An executor's assent to a legacy of slaves may be implied from his division of the slaves between the two infant legatees, and his subsequent admissions that the slaves thus allotted belonged to the respective legatees, although he retained the possession of them.

3. *Action for recovery of legacy.*—After an executor has assented to a legacy, and the period fixed by the will for its payment has arrived, the legatee, or, in case of his death, his personal representative, may maintain an action at law against the executor for its recovery.

Cox's Adm'r v. McKinney.

4. *Payment of legacy by consent.*—Where slaves are bequeathed to several children, each of whom is to receive his or her portion on attaining lawful age or marrying, it is competent for the executor, with the assent of all the parties interested, to make a division among them before the time appointed by the will has arrived ; and the fact that some of the children are then infants, renders the division voidable only, and not void.

5. *Variance.*—Under a complaint in detinue by an administrator individually, a recovery cannot be had on proof of title in his representative capacity to slaves of which he has never had the possession.

6. *Relevancy of evidence on question of title to slaves.*—In an action brought by an administrator, to recover slaves bequeathed to his intestate, which the defendant claimed under purchase from one of the distributees, neither the fact that there were no debts against the estate of the plaintiff's intestate, nor that the suit was prosecuted for the benefit of only two of the distributees of his estate, is relevant evidence for the defendant.

7. *Estoppel against distributee no defense against administrator.*—An estoppel *en pais* against some of the distributees of an estate, arising from their conduct in inducing the defendant to purchase slaves from another which belonged to the estate, is no defense to an action at law brought by the administrator to recover the slaves.

8. *Reversal and remandment in favor of plaintiff, although complaint does not authorize recovery.*—Although a recovery can never be had by the plaintiff without an amendment of his complaint, the appellate court will reverse and remand in his favor, on account of the admission of illegal evidence, when the record does not show that the complaint may not be so amended as to authorize a recovery by him.

APPEAL from the Circuit Court of Marengo.

Tried before the Hon. ROBT. DOUGHERTY.

THIS action was brought by the administrator of Scriven S. Cox, deceased, against Burwell KcKinney, to recover several slaves, together with damages for their detention from the 1st January, 1843. In the marginal statement of the parties in the complaint, the words "adm'r of Scriven E. Cox, deceased," followed the plaintiff's name; but the complaint did not otherwise show that the suit was brought by him in his representative character. No pleas appear in the record.

It appeared from the evidence adduced on the trial, as the same is set out in the plaintiff's bill of exceptions, that the ancestors of the slaves in controversy belonged to John Cox in his lifetime, who was the father of said Scriven E. Cox, and who died in South Carolina, the place of his residence, in 1828, leaving a last will and testament, which was duly admitted to probate after his

death, and which contained a clause in these words: "After all my just debts and funeral expenses are paid, I give and bequeath unto my beloved wife, Eleanor Cox, and to my beloved children, all my personal estate, to be equally divided between them, share and share alike, to them, their heirs and assigns, forever; and my will is, that each child shall draw their shares as they come of lawful age or marry." The testator's widow, Eleanor Cox, and his seven children, Joseph, Thomas, Washington, Eleanor, Amaryntha, Scriven, and Robert S., survived him. The widow died in 1845, Thomas in 1831, Scriven in 1841, Robert in September, 1843, Washington in 1839, and Joseph in 1850. Eleanor married one Wm. L. McCaa, in South Carolina, in 1830; and Amaryntha married James R. Jones, in Alabama, in 1837. Joseph Cox, the testator's eldest son, qualified as executor of his will, in May, 1828.

Some time prior to 1833, a division of the testator's property was had, in South Carolina, and the shares of the widow and four oldest children (Joseph, Washington, Thomas, and Mrs. McCaa) were allotted to them respectively. In 1833, the executor removed to Marengo county, Alabama, "and brought with him the shares of Amaryntha, Scriven and Robert S. Cox of the slaves of their father's estate, which slaves had not been separated or divided, but were held by him as the joint property of said three legatees, who were all minors, and who lived with said Joseph Cox." In 1838, Amaryntha having previously married said Jones, "a division of said three shares was made between Amaryntha, Scriven and Robert, by men called on for the purpose, at the house of said Joseph Cox, and in his presence; all the parties in interest consenting to said division, though there was no evidence that it was made by authority from any court." Mrs. Jones received the slaves allotted to her on this division, and the others were allotted to said Scriven and Robert Cox. Among the slaves thus allotted to said Scriven were several of those here sued for; all the others being their children, and born since that time. It was proved that, after this division, "said Scriven and Robert always

claimed the slaves severally allotted to them ; that said Joseph Cox continued to control them as executor, but always afterwards, up to the deaths of said Scriven and Robert, admitted that the slaves allotted to each of them belonged to them respectively ; and that the slaves allotted to said Scriven were afterwards known in the family of said Joseph Cox, and recognized by him, as her property." After the death of said Scriven, her slaves were divided between Joseph and Robert Cox, in accordance with a wish expressed by her a short time before her death. On this division, the slaves here in controversy were retained by said Joseph Cox as his share, and were sold under execution against him on the 23d May, 1843; the defendant becoming the purchaser, and receiving the sheriff's deed.

It appeared in evidence, also, that Scriven Cox, at the time of her death in 1841, was only eighteen years of age, and that said Robert Cox was still younger; and that letters of administration on the estate of the former were duly granted, by the probate court of the county, to the plaintiff in this suit, on the 8th November, 1853. The court allowed the defendant to prove, against the plaintiff's objection, "that said letters of administration were granted, and that this suit was prosecuted, at the instance and for the benefit of Mrs. McCaa and Mrs. Jones, and that the other heirs-at-law of said intestate were taking no part in the prosecution thereof;" also, "that plaintiff admitted, more that eighteen months after the grant of his letters of administration, that no debt against the estate of his intestate had been presented to him, and that he knew of no debt against said estate ;" also, "that at the time of his purchase at said sheriff's sale by defendant, said James R. Jones and Wm. L. McCaa, the husbands of said Amaryntha and Eleanor respectively, urged and persuaded him to buy said negroes." The plaintiff reserved exceptions to the admission of each portion of this evidence.

On all the evidence adduced, the substance of which is above stated, the court charged the jury, "that if they believed all the evidence, they must find a verdict for

the defendant;" to which charge, also, the plaintiff excepted.

In consequence of the several adverse rulings of the court, the plaintiff was compelled to take a nonsuit, which he now moves to set aside; assigning as error all the rulings of the court to which he reserved exceptions.

WM. E. CLARKE, and I. W. GARROTT, for appellant.

WM. M. BROOKS, and JNO. A. ELMORE, *contra*.

WALKER, J.—The legacy created by the will of John Cox, in favor of Scriven Cox, was certainly a vested, not a contingent legacy.—Savage v. Benham, 17 Ala. 127; McLemore v. McLemore, 8 Ala. 690; McLeod v. McDonald, 6 Ala. 236; Travis v. Morrison, 28 Ala. 494; Nixon v. Robbins, 24 Ala. 663.

[2.] The division of the slaves between Scriven Cox and her brother (Robert S. Cox) by the executor, and his subsequent uniform admission that the shares into which the slaves were thus divided belonged respectively to Scriven and Robert S. Cox, authorize the implication of the executor's assent to the legacy.—Thompson v. Schmidt, 3 Hill's (S. C.) R. 156; 1 Roper on Legacies, 568.

[3.] The legacy being assented to, it might have been recovered in an action at law by the legatee, when the period of payment according to the will arrived. The legatee having died, the same action at law may be maintained by her representative after the period of payment. 2 Williams on Executors, 1198–1199. As this suit was commenced long after the time of payment, it is not requisite that we should decide whether the action at law could have been maintained before such time of payment.

[4.] The division of slaves, made by the executor, between Scriven and Robert S. Cox, was not void. It was assented to by the only persons interested; and it was competent for the executor to make a division with their assent, and by them approved, before the time appointed by the will for the division.—Rocke v. Rocke, 9 Beav. 66; Josselyn v. Josselyn, 9 Sim. 63; 2 Williams on Ex'rs, 1199–1200. The division would not be abso-

lutely void on account of the infancy of those assenting to it. It would only be voidable, under the law as held at this day.—Weaver v. Jones, 24 Ala. 420 ; Slaughter v. Cunningham, 24 Ala. 260. The case of Johnson v. Culbreath, 19 Ala. 348, is unlike this, in two particulars : 1st, in that case, the bequest directed that, if any of the children should die before attaining majority, the division should be made among the others, so that it could not be ascertained who would take the legacies until the time appointed for the division should arrive ; and 2d, in that case, the legatee who was in his minority at the time of the division dissented upon attaining majority, and filed a bill in chancery for relief against it. Here, the persons who are to take are ascertained, and there is no act or word by the representatives of the infants designed to avoid the division.

[5.] For these reasons we should hold, that the court erred in its charge, if the complaint were adapted to the cause of action made by the proof. But the complaint is by the appellant as an individual, while the proof only conduces to show title in him as an administrator. For this reason, we are constrained to hold, that there was no error in the charge of the court.

[6.] The evidence introduced by the defendant, to show that there were no debts against the estate of plaintiff's intestate, and that the administration was obtained and the suit brought for the benefit of Mrs. McCaa and Mrs. Jones, two of the distributees of the estate of plaintiff's intestate, was certainly illegal. It was totally irrelevant to the question on trial.

[7.] If it be conceded, that the conduct of some of the distributees amounted to an estoppel in favor of the defendant, so as to operate a transfer of their interest to him, it would be no defense in this action ; because the interest of the distributees is purely equitable, and the transfer by them to the defendant would be no defense to a suit at law by the administrator.

[8.] For the error in the admission of evidence above noticed, the judgment of the court below is reversed, and the cause remanded. Notwithstanding it may be clear that

the plaintiff cannot recover upon the complaint as it now stands, we cannot say, upon the whole record, that he cannot recover after an amendment of the complaint. Williams v. Agee, 30 Ala. 636; Crimm v. Crawford, 29 Ala. 623.