## CLOPTON AND WIFE *vs.* JONES' EXECUTOR.

[FINAL SETTLEMENT AND DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Will authorizing estate to be kept together, and family to be supported jointly out of income.*—A will containing the following provisions— " I wish my just debts first satisfied and paid, and the balance of my estate to be kept together till my oldest child becomes of age or marries ; then, I wish that child to draw an equal part of my estate, except the land ; the balance of the children to be dealt with as the oldest or first—to remain together with their mother, until such time as they attain age or marry ; at which time, I wish each one to draw his or her equal part of my estate, except the land. When my youngest child becomes of age, or marries, I wish my wife to take her dower in my lands, and a child's part of my other property ; and the balance of the land I wish sold, and the moneys arising from such sale to be equally divided among my children. . I wish my children to receive a good English education, and my sons to be raised to business"—authorizes the family to be kept together and supported jointly out of the income of the estate ; consequently, the special expenses incurred by one of the children, prior to her marriage or attainment of majority, are not a proper charge against her separate distributive share of the estate.

Appeal from the Probate Court of Madison.

In the matter of the final settlement and distribution of the estate of Arthur W. Jones, deceased, and the settlement of the accounts and vouchers of Friley Jones, the executor. The will of the said Arthur W. Jones, which was admitted to probate on the 21st October, 1833, contained the following clauses : "I wish my just debts first satisfied and paid, and the balance of my estate to be kept together till my oldest child becomes of age or marries; then, I wish that child to draw an equal part of my estate, except the land ; the balance of the children to be dealt with as the oldest or first—to remain together with their mother, until such time as they attain age or marry ; at which time, I wish each one to draw his or her equal part of my estate, except the land. When my youngest child becomes of age, or marries, I wish my wife to take her dower in my lands, and a child's part of my other property ; and the balance of the land I wish sold, and the moneys arising from such sale to be equally divided among my children. I wish my children to receive a good English education, and my sons to be raised to business. I give to my son William Arthur my gold watch, when he arrives at the age of twenty-one years ; should he die before he becomes of age, I wish my son James Monroe to have it when he attains the age of twenty-one years." The testator left a widow and four children surviving him. The widow dissented from the will, and married Benjamin Coyle in 1837 ; and in 1838, under orders of the orphans' court, her dower was allotted to her, together with one-fifth part of the slaves belonging to the estate. In February, 1840, Mary W. Jones, one of the testator's children, married R. J. Clopton; and in January, 1841, under orders of the orphans' court, one-fifth part of the slaves was allotted to her and her said husband.

On the settlement of the executor's accounts, as appears from the bill of exceptions, it was ascertained that, up to January 1, 1841, he had received assets amounting to

$20,476 41, and had expended in payment of debts, and in keeping the estate together and working it, $19,576 98 ; leaving a balance of $899 43 in his hands, subject to distribution. Thereupon, Clopton and wife moved the court to render a decree in their favor, against the executor, for one-fourth part of that amount. The executor resisted this motion, and proved to the court that, during the years 1834, 1835, 1836, 1837, 1838, 1839, and 1840, he, as executor, had paid accounts contracted by Mrs. Clopton for board, clothing, tuition, &c., amounting in the aggregate, with interest, to about $3,300. It was shown, also, that after the widow drew out her portion of the estate, the executor rented out the lands, and hired out the negroes, during the years 1838, 1839, and 1840 ; and that Mrs. Clopton was a minor at the time of her marriage. The inventory and appraisement of the estate were also read in evidence. "On this proof, Clopton and wife contended, that the executor was not entitled to a credit for the accounts so paid by him ; and that if he was entitled to any credit at all therefor, then not for the full amount claimed, because said expenditures were extravagant, not suitable to her estate and condition, and exceeded each year her share of the income of the estate." The court held, that the executor was entitled to a credit, as against Clopton and wife, for the full amount of the accounts so paid by him, and therefore refused to render any decree against him, in their favor, for Mrs. Clopton's interest in the balance subject to distribution. It was shown, also, that the executor had sold the lands of the estate after the youngest child had attained his majority, and received $1,920 92 as the proceeds of sale ; and Clopton and wife asked the court to render a decree against the executor, in their favor, for one-fourth of the amount so received ; but the court refused to render any decree against him on that account. These two rulings of the court, to which exceptions were reserved by Clopton and wife, are now assigned as error.

JAMES ROBINSON, for appellants.

R. C. BRICKELL, *contra.*

A. J. WALKER, C. J.—The construction which was put upon a will of somewhat similar provisions in *McLeod v. McDonald*, (6 Ala. 236,) is a precedent for construing the will in this case, as authorizing the keeping the family together, and supporting them from the income of the estate in the hands of the executor; and we adopt that construction. The intention of the testator, as implied from the will, was, that the wife and children should, until a specified event occurred, preserve the family relation towards each other, to be broken only as the children should marry, or attain majority; that the family should be maintained from the income of the estate, and that the management of the estate should correspond, as nearly as possible, in its relation to the wife and children, to the beneficent arrangements of a husband and father, directing his property and its income to the single purpose of benefitting the family. A large portion of the expenses devolving upon the estate would necessarily attach to the family collectively, so as to prevent the ascertainment of the distinct portions attributable to the respective members of the family. The widow and each one of the children would necessarily be the cause of some expenses, which would be separate and distinguishable from the expenses of the collective family. The expenses incurred by the family in its collective capacity must, of necessity, have been a charge upon the general fund produced by the income of the estate. So, we think the distinguishable expenses of the respective children were charges upon the same fund, and not upon the several shares of the children for whom the expenses were incurred. The will makes no distinction between that part of the family maintenance which was enjoyed in common, and that part which was enjoyed by the members of the family separately; and it would be difficult to find an argument by which the testator's intention that such a distinction should be made could be proved. The will neither provides for a division of the income, nor establishes any distinct interests in it, but leaves it as a common stock for common enjoyment; and it seems to us

that, to charge upon the individuals deriving a support from the income the amount received, would infringe the manifest spirit of the instrument.

The decision in *Pickens v. Pickens*, (35 Ala. 442,) was made in reference to an estate kept together under the statute, one section of which required, that separate accounts should be kept of moneys appropriated and expended for each distributee. The decision in that case, pronounced upon the authority of that and other provisions of the statute, can not afford a rule for our guidance in this case. So, also, in *Pinckard v. Pinckard*, (24 Ala. 250,) we find no analogy to guide us in this case; because there was no will, and the distributees having no right, save that which pertained to them in their capacity of distributees, were properly charged with whatever might be received by them respectively as a part of their distributive shares of the estate. For these reasons, we decide, that the court erred in charging the appellant separately with the sums expended in her maintenance and education, before her marriage or attainment of majority.

We are not able to pronounce, upon the evidence before us, that the appellant's expenses were for articles not suitable to her fortune and condition in life.

Reversed and remanded.