[Foster et al. v. Holland.]

# Foster *et al. v.* Holland.

*Bill in Equity by Legatees, against Heirs of Deceased Surety on Official Bond of Insolvent Executor.*

1. *Legacies held to be vested, not contingent.*—Where a testator, declaring that he had made greater advancements to his deceased son than to his deceased daughter, their three children being his only devisees and legatees, and that he wished to "make them all equal at my [his] death," directed his executors to keep his estate together, and to cultivate his plantation with his slaves, buying or selling land at their discretion, until his said grandchildren should marry or come to the age of twenty-one years, "when an equal division of all the estate shall then be made between them, or the survivors;" further declaring, "should my said grand-daughter live to become entitled to the one-third part of my estate, as above provided, it is my will and intention that she shall take and hold her share of the estate, when allotted to her, for her sole and separate use;" directing that the proceeds of the crops, or a sufficient part thereof, be appropriated to the maintenance and education of his said grandchildren, to be equally divided between them, "until the time herein specified for the division of the estate among them;" and that the money paid out by the executors in their maintenance and education, "prior to the distribution of the estate between them," should be stated by the executors on their final settlement, "and charged to each distributee on final division;" there being no residuary clause, and no bequest over: *held,* that the legacies were vested, not contingent, though the time of distribution was postponed.

2. *Presentation of claim against decedent's estate.*—A claim against the estate of a deceased surety on the official bond of an insolvent executor, for a legacy which vested on the testator's death, although the time of payment was postponed until after the death of the surety, must be presented to his personal representative (Rev. Code, §§ 2239–40), within eighteen months after the grant of administration.

APPEAL from the Chancery Court of Lauderdale.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 29th of May, 1875, by John R. W. Foster, Turner S. Foster, and Anne Eliza Wilson, grandchildren of John S. Wilson, deceased, against the children and heirs at law of James L. Holland, deceased, who was a surety on the official bond of one John W. McAllister, as executor of the last will and testament of said John S. Wilson; and sought to charge the property which the defendants had received from the estate of their deceased father, on its final settlement and distribution, with the amounts due to the complainants respectively on decrees rendered in their favor by the Probate Court, on final settlement of the accounts of said executor, on account of legacies bequeathed to them by said John S. Wilson. The said John S. Wilson died in said county of Lauderdale, where he

[Foster et al. v. Holland.]

resided, in 1865; and his last will and testament, which was dated the 23d July, 1860, and was duly probated in said county after his death, was in the following words:

"I, John S. Wilson, of Lauderdale county, State of Alabama, do make and publish this my last will and testament, hereby revoking all others by me heretofore made; and I dispose of all my estate, both real and personal, as follows, to-wit: *Item* 1st. I direct my executors, hereinafter to be mentioned, to sell at public sale, on such terms as they may think proper, and as soon after my decease as practicable, the surplus perishable property belonging to my estate; reserving such stock and utensils, household and kitchen furniture, as may be necessary to carry on the farm, and then to pay all my just debts.

"Having advanced to my son Thomas in his life-time more than to my daughter Anne Eliza Foster, and wishing to make them all equal at my death, my executors will continue to keep up and cultivate my farms, being the plantation on which I reside, and the farm on Cypress which I loaned to my son, Thomas Wilson; to buy more land, if necessary, and to sell off any of my land, in order to invest the proceeds in other lands, should my executors think proper to do so; hereby giving my executors full power to sell and convey title to the land they may sell under this will. They may hire out any of my negroes; but I particularly request them to hire to such persons as will treat them with humanity, and feed and clothe well, and will not abuse the negroes hired from my executors.

"*Item* 3. It is my will that my said farms be kept up, and cultivated by my negroes, until my grandchildren, Anne Eliza Wilson, child of my deceased son (Thomas Wilson), and my grandsons, J. R. Wilson Foster and Turner S. Foster, sons of my deceased daughter (Anne Eliza Wilson), shall marry, or come to the age of twenty-one years; when an equal division of all my estate shall then be made between them, or the survivors. My executors will, in making this division, endeavor to allot or select the negroes in families, so as to have them as little separated as possible.

"*Item* 4. Should my grand-daughter, Anne Eliza Wilson, live to become entitled to the one-third part of my estate, as provided in the 3d item, it is my will and intention that she shall take and hold her share of my estate, when allotted to her, for her sole and separate use; not to be subject to the debts, liabilities, or contracts of any husband she may marry.

"*Item* 5. The proceeds of the crops raised on my farms, or a sufficient part thereof, I hereby appropriate to the main-

tenance and education of my said grandchildren, to-wit: J. R. Wilson Foster, Turner S. Foster, and Anne Eliza Wilson; to be divided equally between them, until the time herein specified for the division of my estate between them, as hereinbefore provided.

"*Item* 6. I desire and direct my executors to look to the comfort of my faithful old servant, Nelson; that they permit Nelson to choose whomsoever he will for master; that he go to such home as he may select; and that he be allowed yearly, out of my estate, whatever sum may be necessary for pocket change, and whatever sum may be necessary for his support, when he becomes too infirm to maintain himself; which I direct my executors to pay out of my estate.

"*Item* 7. The money paid by my executors in the maintenance and education of my said grandchildren, prior to the distribution of my estate between them, shall be stated in their settlement by my executors with the Probate Court, or court having proper jurisdiction, and allowed to my executors in their settlement with the court as executors, and said sums charged to each distributee on final division between them.

"I hereby appoint John W. McAllister, Sidney C. Posey, and Turner S. Foster, my executors of this my last will and testament. In witness whereof," &c.

John W. McAllister alone qualified as executor of the will, and gave bond, and entered on the discharge of the duties of the trust; and the sureties on his original bond having become insolvent, he gave a new bond on the 7th August, 1869, with James B. Irvine and said James L. Holland as his sureties. On the 24th April, 1871, said James L. Holland died, intestate, and letters of administration were afterwards duly granted on his estate; and a final settlement and distribution of his estate was made among his widow and children, on the 23d June, 1873, by decree of the Probate Court; the personal assets thus distributed amounting to more than $26,000, while a large tract of land was also inherited by said heirs, containing nearly three thousand acres. McAllister, the executor, having filed a bill in the Chancery Court for the settlement of his trust, decrees were rendered against him by that court, at its May term, 1875, on final settlement of his accounts and vouchers, in favor of each of the complainants in the present suit, for sums amounting in the aggregate to $23,088.64; and executions on these decrees were issued, and returned "No property found," before the bill was filed. The bill alleged, in addition to the facts above stated, that McAllister and James B. Irvine was both insolvent; that no one of the complainants had ever married;

[Foster et al. v. Holland.]

that Anne Eliza Wilson, the youngest of them, attained the age of twenty-one years on the 7th December, 1873; and that the claim which they sought to enforce by their bill was presented to the personal representative of said James L. Holland's estate on the 29th May, 1875, before this bill was filed.

The chancellor sustained a demurrer to the bill, on the ground that it failed to show a presentation of the claim to said Holland's administrator within eighteen months after the grant of letters, or eighteen months after its accrual, as required by the statute of non-claim; and his decree is now assigned as error.

R. McFARLAND, with W. & L. B. COOPER, for appellant.—1. The bequests contained in the will of Thomas Wilson, in favor of the complainants, are contingent, and did not vest until they arrived at the age of twenty-one years, or married before that time. This intention is clearly shown by the third and fourth items of the will, if the other clauses left it doubtful. He directs his executors to keep up his plantation, cultivating the lands with the negroes, and selling or buying lands at their discretion, *until* his grandchildren shall marry, or attain the age of twenty-one years; "*when*," he declares, "an equal division of all the estate shall *then* be made between them, or the survivors;" and further, "should my grand-daughter, Anne Eliza Wilson, *live to become entitled* to the one-third part of my estate," &c. The bequests are clearly contingent: time is annexed to the gift, and is of the substance of it; and if one of the legatees had died before attaining the age of twenty-one years, or marrying, the survivors would have taken the whole estate. The case of *Travis v. Morrison*, 28 Ala. 494, is conclusive authority on this question. See, also, *Collier v. Slaughter's Adm'r*, 20 Ala. 263; *Nixon v. Robbins*, 24 Ala. 670; *Walker v. Walker*, 17 Ala. 398; *Marr's Executor v. McCullough*, 6 Porter, 507; *Sansbury v. Read*, 12 Vesey, 75; 5 Vesey, 17, note 5; 19 Ohio St. 30, or 2 Amer. R. 369; *Olney v. Hull*, 21 Pick. 311; 1 Jarman on Wills, 777, 1st ed.; 2 Williams on Executors, 891.

2. The claim was not barred by the statute of non-claim. It was a contingent claim, which might never arise; and it certainly could not be barred, before it in fact accrued.— *Pinkston v. Huie*, 9 Ala. 252; *Neil v. Cunningham*, 2 Porter, 171; *McBroom v. Governor*, 5 Porter, 32; *Cawthorne v. Weisinger*, 6 Ala. 174; *Hooks & Wright v. Branch Bank*, 23 Ala. 762; *Jones v. Lightfoot*, 10 Ala. 18; *Cannon v. Copeland*, 43 Ala. 203; 4 Eng. Ark. 412; 14 Ark. 253. Notwithstanding Holland's death, his estate remained bound for the executor's

faithful discharge of his duties.—*Moore v. Wallis*, 18 Ala. 458 ; *Hightower v. Moore*, 46 Ala. 387.

W. B. Wood, *contra.*—1. Under the will of their ancestor, the complainants took a vested estate, though subject to be defeated by death before the time appointed for the final division. Where the words of the will are of doubtful con·struction, the courts incline to hold the bequest vested rather than contingent.—*Eldridge v. Eldridge*, 9 Cush. 516; *Olney v. Hull*, 21 Pick. 312 ; *Dingley v. Dingley*, 5 Mass. 535. Where the remainder, or estate over, is given to all the testator's children (or grandchildren) as tenants in common, it is regarded as a decisive circumstance in favor of an intention that they shall take vested interests.— 2 Redfield on Wills, 236, § 36. Where there is an intermediate accumulation of the interest, or the expenditure of it is directed, for the benefit of the legatee, the bequest will be considered vested, and only the payment deferred.—2 Redf. Wills, 250, § 57 ; *Ib.* 252, § 59. Where interest is directed to be paid on a legacy, it will be treated as vested during that period ; and where the estate is held in trust, to invest and improve for children, until they attain a certain age, it will be held a vested legacy. 2 Redf. Wills, 260, § 72, and cases cited in note 157.

These are established rules of construction, and they are sustained by the adjudged cases in Massachusetts, New York, Pennsylvania, Georgia, Ohio, Connecticut, Delaware, Florida, and other States.—See *Thompson v. Thompson*, 28 Barbour, 432; *Burrill v. Shiel*, 2 Barbour, 457 ; *Patterson v. Ellis*, 11 Wendell, 259 ; *Hone v. Van Schaik*, 20 Wendell, 564 ; *Van Wych v. Bloodgood*, 1 Bradf. 154 ; *Roome v. Phillips*, 24 N. Y. 463 ; *Conklin v. Conklin*, 3 Sandf. Ch. 64 ; *Parsons v. Lyman*, 40 N. Y. 103 ; *S. C.*, 28 Barbour, 564 ; *Weyman v. Ringold*, 1 Bradf. Sur. 40 ; *Bowman's Appeal*, 34 Penn. St. 19 ; 24 Penn. St. 327 ; 40 Penn. St. 182 ; 51 Penn. St. 504 ; *Letchworth's Appeal*, 30 Penn. St. 175 ; *Furness v. Fox*, 1 Cush. 134 ; *Ordway v. Dow*, 55 N. H. 11 ; *Young v. McKinnie*, 5 Florida, 542 ; *Everett v. Mount*, 22 Georgia, 323 ; *Bowman v. Long*, 23 Georgia, 242 ; *Thompson's Lessee v. Hoop*, 6 Ohio, N. S. 480 ; *Dale v. White*, 33 Conn. 294 ; *Harris v. Alderson*, 4 Sneed, 250 ; *Conwell v. Heavilo*, 5 Harring. 296 ; *Colt v. Hubbard*, 33 Conn. 281 ; *Nash v. Nash*, 12 Allen, 345.

The same rules of construction have received the repeated approval of this court, as shown in the following cases: *Savage v. Benham*, 17 Ala. 119 ; *Marr's Executor v. McCullough*, 6 Porter, 507 ; *Gregg v. Butler*, 6 Porter, 9 ; *McLeod v. McDonnell*, 6 Ala. 236 ; *McLemore v. McLemore*, 8 Ala. 690 ; *Farley v. Gilmer*, 12 Ala. 143 ; *Nixon v. Robbins*, 24 Ala. 663. Opposed

to this array of authorities, stands the single case of *Travis v. Morrison*, 28 Ala. 494, mainly relied on by appellant's counsel; of which Mr. Redfield says (p. 257, § 65), that it "seems to be at variance with the general course of decision upon the question;" and which seems to have been decided on its own peculiar circumstances, and the supposed hardship which would have resulted from a different construction.

2. The claim is barred by the statute of non-claim, as conclusively settled by the late case of *Fretwell v. McLemore*, 52 Ala. 124.

STONE, J.—Two controlling clauses in the will of Mr. Wilson fix its interpretation, and force us to the conclusion that the legacies in this case are of the class called vested. First, the expression, "Having advanced to my son Thomas, in his life-time, more than to my daughter Anne Eliza Foster, and wishing to make them all equal at my death." Second, "The proceeds of the crops raised on my farms, or a sufficient part thereof, I hereby appropriate to the maintenance and education of my said grandchildren, to-wit: J. R. Wilson Foster, Turner S. Foster, and Anne Eliza Wilson, to be divided equally between them, until the time herein specified for the division of my estate between them, as hereinbefore provided. * * * The money paid by my executors in the maintenance and education of my said grandchildren, prior to the distribution of my estate between them, shall be stated in their settlement by my executors, with the Probate Court, or court having jurisdiction, and allowed to my executors in their settlement with the court as executors, and said sums charged to each distributee on final division between them."

The three grandchildren named above, all of tender years, constituted the entire line of descendants from the said testator; and, with the exception of a small but praise-worthy provision for his "faithful old servant, Nelson," seem to have been the entire objects of his solicitude and bounty. The will contains no residuary clause, and no bequest over It disposes of his entire estate, and shows a purpose to leave no intestacy as to any part of his property.

The clauses above copied, we think, show a purpose that the legacies should vest at the death of the testator, and only the complete and separate enjoyment was postponed to an after-time. To hold otherwise, would force on us the necessity of declaring that, as to the principal, or *corpus* of the estate, real and personal, the devise and bequest were entirely contingent until the happening of the event when the

division was to be had, leaving the title of the property un-defined and unascertained in the meantime. This would be to declare a practical intestacy as to the *corpus*, during all those years. The law favors the vesting of legacies, and will not adjudge them contingent, unless the provisions of the will show the testator intended to make them such; and the law will not adjudge a partial intestacy, on strained or doubt-ful interpretations.—*McLeod v. McDonnell*, 6 Ala. 236; *McLe-more v. McLemore*, 8 Ala. 687; *Savage v. Benham*, 17 Ala. 119; *Banks v. Jones*, 50 Ala. 480. See, also, the array of authori-ties collected and collated in the briefs of counsel.

The case of *Travis v. Morrison*, 28 Ala. 494, if not mate-rially shaded by the apparent hardship of the opposite con-struction, is distinguishable from the present one, at least in requiring advancements, made to them for maintenance and education, to be brought into account against them. We do not overrule *Travis v. Morrison*, but we think the principles of that decision should not be extended.

What we have said above shows that the legacies under this will vested in interest on the death of the testator. The 3d item of the will is in the following language: "It is my will that my said farms be kept up and cultivated by my ne-groes, until my grandchildren [naming them] shall marry, or come to the age of twenty-one years, when an equal divis-ion of all my estate shall then be made between them or the survivors." The 4th item has this clause: "Should my grand-daughter, Anne Eliza Wilson, live to become entitled to the one-third part of my estate, as provided in the 3d item," &c. This language shows, that the testator considered he had divided his estate into three parts. We do not think these clauses sufficient to overthrow the presumption, shown above, that the testator intended to create vested legacies. Ample field of operation is left to the clauses above, when we hold that they declare a condition, on which the legacies are to fail; a defeasible bequest.

Having ascertained that the legacies under Mr. Wilson's will were and are vested, it follows, that the bill in the pres-ent case is fatally defective, in failing to aver presentation or filing of the claim within eighteen months under the statute. *Fretwell v. McLemore*, 52 Ala. 124.

The chancellor did not err in sustaining the demurrer to the bill, and his decree is affirmed.