*71 Opinion of the Court,
by Ch. J. Boyle.
Edward Mitchell obtained from the commissioners a certificate for a pre-emption of 1,000 acres of land, and a warrant having issued therefor, an entry was made in virtue of it, with the surveyor, on the 9th December, 1782, and on the 13th of December, 1782, an entry of 400 acres was made in the name of John Long, as assignee of John Craig, upon a treasury warrant, adjoining Mitchell’s pre-emption. Shortly wards, Mitchell’s entry was surveyed and carried into grant, and he sold and conveyed a part of it. Long then caused a survey to be made upon his entry, of 210 acres, interfering with the land sold by Mitchell, and to settle the dispute that thereupon arose between parties, Long agreed to take from Mitchell the same ■quantity of land in another part of his pre-emption, which Mitchell caused to be laid off, and executed his bond, bearing date the 23d of September, 1791, conditioned to convey the same to Long, when requested, and Long gave his bond, bearing the same date, to Mitchell, conditioned to assign to him Long’s right to the interferance, at any time when requested, after Mitchell had acknowledged a deed agreeably to •bond to Long. Mitchell afterwards conveyed, at Long’s request, to a person to whom he had sold 55 1-2 acres, part of the land which Mitchell had thus bound *72 himself to convey to Long; but failing to convey the balance, Long, to compel him to do so, filed this bill in the then quarter session court for Woodford county. Mitchell answered the bill, resisting Long’s right, and in this stage of the cause it was removed to the district court held in Frankfort, and from thence moved, by the consent of the parties, to the general court. Mitchell afterwards died, and the suit was revived against his heirs; and on a final hearing, the general court decreed in favor of Long, and Mitchell’s heirs have apto ^is court.
It is no ground carrefiinto’ef feci-a com-6' promise, that the party a-the^reliefis sought, was a weak and igwhen ^he^ás in the habit of transacting all his own concerns, & the other party used no artifice or contrivance to induce him to enter into the contract.
Nor is it a ground, that plainant'has not conveyed his part,when he was not bound to do so until the defendant had conveyed.
Various grounds are assumed in opposition to the decree of the general court.
ist. it is contended that Long had no valid claim to the land, interfering with Mitchell, because the warrant in virtue of which Long’s entry was made, was not assigned to him, and because a prior survey had been rna<te upon the entry, at the distance of two miles from the interference. It is true, that there is no assignment to Long on the warrant in virtue of which his entry was made; but there is on the warrant an assignment to John Craig, and it appears that he made the entry in the name of Long, as his and this is sufficient, we apprehend, to establish Long’s right to the entry. With respect to the prior survey, it was made by Craig, and, as far as appears in the cause, without the direction of Long; but if it had been made by the direction (-fje ]atter, as it appears to have been off its location, and never to have been returned and recorded, the warrant could not have been thereby merged, and Long’s right to have the entry re-surveyed cannot be questioned. But we cannot admit that it is necessary for Long to establish the validity of his right to the interference in this case. To sanction the compromise, it is sufficient that there was an honest claim on his part, asserted without fraud, and that there was a real ground of dispute. To drive a party, in such a case, to the establishment of his original right, would in effect destroy all compromises, and render contracts of that sort, which the laws looks upon with the utmost indulgence, vain and useless.
2d. It is contended that Mitchell was a weak and ignorant man, and easily imposed upon, and that a court of equity ought not, under the circumstances of this case, to decree a specific performance of the contract. *73 but leave the complainant to his remedy at law. The evidence undoubtedly warrants the belief that Mitchell was a weak and ignorant man; but it is shown that he was in the habit of transacting all his own concerns, and was unquestionably possessed of a competent mind to make an obligatory contract; and there is no proof that he was imposed upon by Long, or that the latter used any artifice or contrivance to induce him to enter into the contract. On the contrary, Long’s conduct appears to have been frank and open, and the arrangement, instead of being disadvantageous to Mitchell, seems, so far as we can judge from the record, to have been a prudent one on his part; for it is apparent that Mitchell’s pre-emption had not been surveyed according to location, and that if both entries were established, Long’s survey would, when properly made, have interfered with that of Mitchell. But, be that as it may, as Mitchell was able to contract, and did in fact contract without fraud on the part of Long, we can see no reason for turning the latter round to a court of law, for relief.
But, 3dly and lastly, it is contended that Long is not entitled to demand a specific performance of the contract on the part of Mitchell, because he is unable to perform his part of the contract, having never carried the interfering survey into grant, and being now unable to do so, from the lapse of time and the operation of law. 'But, by the terms of Long’s contract, he was only bound to assign to Mitchell his right, and this he was not bound to do until after Mitchell had conveyed to Long. Long could not, therefore, be in default, until after Mitchell had conveyed, and the latter never has conveyed, nor offered tó do so. Besides, as Mitchell already had obtained a grant for the land, the assignment of Long’s survey would have been of no greater advantage to him, than the extinction of Long’s title by the operation of law and the lapse of time.
Decree affirmed with costs.