## PAULLING vs. MEADE.

| 23 | 505 |
| 101 | 698 |

| 23 | 505 |
| 129 | 599 |

| 23 | 505 |
| 132 | 168 |

1. When a judgment debtor, or his assignee of the equity of redemption, files a bill to redeem lands sold under execution, he must allege in his bill the performance of all that the statute requires of him; if he fails to allege that possession was delivered to the purchaser without suit, his bill is without equity.

2. When a judgment creditor files a bill to redeem, he must allege in his bill a tender of the amount of the purchaser's bid, together with ten per cent. thereon, and an offer to credit his judgment against the defendant with the further sum of ten per cent. on the amount of the bid.

ERROR to the Chancery Court of Marengo.

Heard before the Hon. J. W. LESESNE.

THE bill in this case is filed by the complainant, William K. Paulling, in the character of purchaser of the equity of redemption of one McNaughton, to certain lands in the county of Marengo which had been sold by the sheriff of said county under sundry orders of sale issued out of the Circuit Court, and bought by the defendant, Lucien Meade; and as the judgment creditor of McNaughton, by assignment of the unsatisfied judgments under which the land was sold by the sheriff.

It alleges that sundry persons, having obtained judgments before a justice of the peace, against McNaughton, caused them, in default of personal property, to be levied on certain lands set out in the bill, and having procured orders of sale as the law directs, had the same sold by the sheriff of Marengo County, in which they are situated, and the defendant became the purchaser on the 1st Monday in January, 1849; that afterwards, on the 14th day of July, 1849, the complainant became the purchaser of all the interest and the statutory equity of redemption in said lands from McNaughton, and took from him and his wife a conveyance thereof, which is exhibited with and made a part of the bill; that complainant also became the purchaser of all the judgments under which the land was sold, much the larger portion of which was wholly unsatisfied by the sale of the lands, and is yet unsatisfied; that anterior to the judgments and the sale of lands mentioned in the bill, McNaughton had

61

made a mortgage of the land to Baron, Meade & Co., of which firm Lucien Meade, the purchaser, is a partner; that previously to the judgments against McNaughton and the sale of the land, to-wit: on the 17th day of August, 1846, McNaughton made a mortgage upon it to Baron, Meade & Co., to secure a debt for the sum of $395, due in the fall of 1845, with a credit of $65; that the law day of the deed was the 1st January, 1847; that shortly after he (complainant) purchased said judgments and became entitled to redeem, he informed Meade of his intention to do so under the statute, but said Meade affirmed he never should redeem said lands, and that he never would accept the money tendered, nor reconvey them; that about the 29th of October, 1850, complainant went to the city of Mobile, in which Meade resides and does business; that complainant went to his store, which was his usual place of business, and finding him absent, tendered to the principal manager of his business the amount bid by him at sheriff's sale and ten per cent. per annum interest thereon, with such lawful charges as were due to him thereon, and his agent refused to receive the sum so tendered, or to reconvey the land; that Meade was absent from the State of Alabama, and continued so absent for from four to seven months in the year 1850 in the northern portion of the United States; that after Meade's return to Mobile, complainant again visited that city with the view of renewing the tender, and procuring a conveyance of the land, but before he reached there Meade had again left that city for New Orleans; that complainant appointed James Crawford his agent, and through him, on the 12th May, 1851, tendered the amount bid by said Meade for said land, with ten per cent. per annum interest thereon, and all lawful expenses and charges thereon, and also tendered the amount due to Baron, Meade & Co. on their mortgage, with legal interest thereon, and demanded a reconveyance thereof; all which was refused.

The bill brings the sum necessary to redeem the land from Meade, as purchaser at sheriff's sale, into court, and again tenders it. It further charges " that, after he (complainant) became owner of said judgments and equity or right of redemption, McNaughton had left it," and as the buildings were going to decay, complainant took possession of the premises, which he still retains, to preserve and use them; that Meade has com-

menced suits against him in Marengo County, one an action of trespass to try titles and for mesne profits, and the other for pretended damages for waste of timber. He prays a reconveyance of the land, a perpetual injunction to the suits at law, and general relief.

Meade answers, admitting the purchase of the land as stated, but denies that he ever refused or said he would refuse to allow complainant to redeem if he was entitled to the privilege of doing so, but referred him, when he said he intended to redeem, to Wm. M. Brooks, Esq., his attorney at law and in fact, to attend to all matters relating to the land in question, and informed complainant that said Brooks was his agent, with full authority to attend to all matters relating to the land; that Brooks then resided in Marengo County, in which county complainant also lived, and not more than fifteen or eighteen miles from him, and continued to reside there until the time for redemption had passed; that the offer to redeem, which complainant pretends to have made at defendant's business house in Mobile, was made to his mercantile clerk, who had nothing whatever to do with the lands in question, and during the temporary absence of defendant at the northern cities to purchase goods; that the tender made by Crawford was after the expiration of the time allowed by the statute to redeem, and he was not bound to accept it; that during the whole period allowed for redemption, Mr. Brooks was his authorized agent to attend to it, and this fact was known to complainant; that respondent resorted to no stratagem or subterfuge to prevent a redemption on the part of any person entitled to it; that complainant had frequent opportunities of making the tender to respondent, but never did.

The case was submitted in the court below on two motions, first, to dismiss the bill for want of equity; and second, to dissolve the injunction on the answer.

The Chancellor held the bill to be without equity, and dismissed it. From this decree a writ of error is prosecuted to this court, and it is here assigned for error.

JOSEPH R. JOHN, for plaintiff in error:

I. McNaughton and wife could sell, and Paulling purchase their right to redeem under the statute. The purchase by Paulling of their right, and tender of the money to the pur-

chaser, entitled Paulling to a reconveyance under the statute.—
7 Humph. 726, 730 ; 11 Illinois 519, 522 ; 7 Cow. 540, 553.

II. The judgments under which the land was sold were still
unsatisfied. These creditors had a right to redeem ; Paulling
purchased their judgments, and they were assigned to him ; by
that assignment he was a *bona fide* creditor under the statute,
and as such entitled to redeem.—11 Illinois 445 ; 1 Cowen
443, 457 ; 7 Cowen 540 ; 17 Ala. 500 ; 18 Ala. 708 ; Clay's
Digest 503 § 5.

III. These authorities show conclusively that the complain-
ant was entitled to redeem, either as assignee of McNaughton,
the debtor, or as a judgment creditor, and in fact in both ca-
pacities.

IV. The allegations in the bill fully show this right in both
capacities, and set out the tender sufficiently and in time, as
well as show reasons which rendered a tender unnecessary, there-
fore the bill is sufficient in its allegations ; but, if there is a
defect in some of its allegations, the complainant should have
had an opportunity to amend, but never was allowed. If the
bill makes a case for relief, it should not have been dismissed
because of defective averment. As to tender, see Appleton v.
Donaldson, 3 Barr Penn. R. 381, 383 ; Moffat v. Parsons, 5
Taunton 307 ; 2 Green. Ev. 499 § 606 ; 4 Phil. Ev., note 180,
page 234.

V. The decree seems not to controvert the above positions of
law, but is predicated on the proviso in the statute. The
Chancellor mistakes the allegations of the bill in this respect.
The bill shows that McNaughton, the defendant in execution,
did give up the possession without suit. The bill shows a literal
compliance with the proviso on the part of the defendant in ex-
ecution, and the right to redeem, so far as the proviso is con-
cerned, was perfect and vested when Paulling purchased. The
operation of the proviso is the subject matter of defence. If
the complainant comes within the statute, he need say nothing
of the proviso.—Clay's Digest 502 § 5.

VI. McNaughton having complied with the proviso, and the
complainant having become his assignee, as alleged in the bill,
all that remained to be done to perfect the right to a reconvey-
ance was a tender of the money, which is alleged. When Mc-
Naughton left the premises, if he had tendered the money ac-

cording to the statute, he would unquestionably have been entitled to a conveyance. Paulling, being his assignee when the tender was made, had the same right.

VII. This being so, can the mere fact that Paulling ousted Meade after McNaughton left the possession, produce a forfeiture of this right? Certainly not. This entering into possession by Paulling was, at most, but a trespass, and for this trespass he is responsible for damages; but he forfeits no other right. Otherwise, he suffers the loss of his right to redeem, loses his debt, and is responsible in damages besides. This would be a triple penalty, and would also defeat the ends of the statute. A proviso should never receive such a construction. Besides, it does not appear from the bill that McNaughton was in possession at the time of execution sale, and therefore the proviso does not apply to this case.

VIII. But admit that Paulling, by going into possession, forfeited his right to redeem as the assignee of McNaughton. This fact certainly cannot prevent him from redeeming as a creditor, because the statute proviso does not apply, and never was intended to apply to creditors. Any one having the right to redeem can do so, whether in possession or not, as all the cases in Tennessee show. But for the proviso here in our own statute, the rule would be the same with us. The proviso does not apply to creditors; therefore a creditor can redeem, although in possession.—6 Humph. 134; 7 Humph. 291.

IX. The act of 1842 is a remedial statute, passed for the benefit of the debtor, and should be so construed as to accomplish the intention of the legislature. Being remedial, it must be liberally construed.—7 Cowen 553.

X. The Chancellor seems to be of opinion that Paulling should have abandoned the possession before filing his bill, and that by giving up the possession now he can then file his bill. This may be true. But it is doubtful whether he can better his position by any act done after the expiration of the two years. Can any act done after that time relate back, so as to perfect the right to redeem? It would seem from the current of the authorities that the abandonment would not now aid Paulling, though the point is not settled; and if he can cure the defect by abandonment, then the consequences would not be so serious. The authorities relied on for the defendant in error do not affect

or conflict with the above positions. The case in 1 Cowen 501 merely determines that a mortgagee is not within the statute, and cannot redeem ; the mortgagor is, and therefore can redeem. The case in 4 Cowen determines that, after the time has expired, no redemption will be allowed. The case in 19 John. 381 settles that a judgment lien is necessary in order to redeem under the N. Y. statute ; our statute is different, and the N. Y. case and others on this point do not apply with us.—13 Ala. 604 ; 11 Illinois 445. Waller v. Harris, 20 Wend. 555, and Dickinson v. Gilliland, 1 Cow. 481, simply determine that the statute must be complied with before a redemption will be allowed; this we do not deny. The case of the Branch Bank at Decatur v. Donelson, 12 A. R. 741, is as to statute of nonclaim, and is not in conflict with our rights.

WM. M. BROOKS, contra :

The purchaser of land at execution sale becomes " the absolute owner," and the creditor or former owner has nothing but the naked right of redemption, which is irretrievably lost unless asserted in the time and manner prescribed by law.—Ransom v. Pillow, 7 Humph. 291. A failure to tender the amount prescribed by the statute will be fatal to the right to redeem, although it arises from mistake.—Dickinson v. Gilliland, 1 Cow. 498 ; Ex parte Penn. Iron Co., 7 Cowen 550. If the tender is not made strictly within the two years after the purchase, it is too late.—Pugsley v. Lather, 1 Wend. 42.

The bill in this case is defective for uncertainty. It does not explicitly state- whether the complainant claims the right to redeem as assignee of the judgments, or as assignee of McNaughton's rights. If he seeks to redeem as a creditor, his bill is defective, because it does not show that he has complied with the requisitions of the statute.—Clay's Digest 502 § 2. The allegation as to the tender made is insufficient in failing to aver an offer to credit the defendant in execution with the " further sum of ten per cent. on the amount bid." It is also defective in not alleging that complainant prepared and tendered a deed to defendant, and demanded its execution ; and also in not specifying the sum tendered.

If complainant seeks to redeem as assignee of McNaughton's rights, his bill is equally defective. It is obnoxious, in this view,

to all the foregoing objections, except as to the offer to credit the debtor with ten per cent. on the amount of the bid, and to the further objection that it does not aver the delivery of possession to the purchaser without suit; but, on the contrary, shows that McNaughton abandoned the possession to Paulling, who has kept Meade out up to the present time. Before Paulling can successfully seek equity, he must do equity. If he is clothed with McNaughton's rights and privileges, he is also bound to the performance of his duties. By retaining the possession, he has forfeited all right to redeem.

.LIGON, J.—Before proceeding to consider the case really made by the bill, it is best to remark, perhaps, that it is not in any aspect a bill to redeem under the mortgage from McNaughton to Baron, Meade & Co., as it is wholly deficient in the allegations and parties necessary to make it such. All the allegations which it contains with reference to this matter will, therefore, remain wholly unconsidered, and we will address ourselves to the case as one arising under our statute to prevent the sacrifice of real estate.

Under that act, two classes of persons are privileged to redeem, viz., the defendant in execution, who delivers possession without suit, and *bona fide* creditors. The former of these can never be mistaken; and the latter, by previous decisions of this court, are held to be composed of all creditors who reduce their claims to judgments before the time for redemption has expired. —Clay's Digest 502 §§ 1, 2; Scales v. Thomason, 12 Ala. 309.

In both these characters the complainant, by his bill, claims to stand. He claims to represent McNaughton, the defendant in execution, by virtue of McNaughton's conveyance to him of his equity of redemption in the lands in dispute; and to occupy the place of a creditor, by virtue of his purchase of the outstanding unsatisfied judgments under which the lands were sold by the sheriff at the time Meade, the defendant, became the purchaser.

That the judgment debtor has the right to sell his equity of redemption, cannot be questioned; and when sold, the purchaser becomes substituted to all the rights and remedies which the statute confers on the debtor himself, and is subjected to all the duties which by law devolved on his vendor. In order to

entitle the execution debtor to demand a reconveyance from the purchaser, the law makes it his duty to surrender the possession of the premises to such purchaser without suit, to tender him the amount of his bid, with ten per cent. per annum on the same to the time of the tender, with all expenses incurred, to pay the expenses of reconveyance, and to make such tender within two years from the time of sale.—Clay's Digest 502–3 § § 1, 2, 5; Sanford v. Ochtalomi, at this present term. A deficiency in either of these respects, unless satisfactorily excused by the bill, will be fatal to his cause ; and as they are all necessary to entitle him to relief, they must be set forth in the bill itself.— Sanford v. Ochtalomi, *supra*.

Let us test this portion of the complainant's bill by these rules. The allegation with regard to the surrender of possession by Mc-Naughton, the defendant in execution, is in these words; " that after he (complainant) became the owner of said judgment, and equity or right of redemption, McNaughton had left it," (the land,) and complainant took possession of it, as he supposed, and insists he had a right to do. The long established and well settled rule of pleading is, that the allegations of the bill must always be taken most strongly against the pleader ; but it scarcely requires the aid of this rule to interpret this allegation as one of continued possession by McNaughton and the complainant, from the time of the sale to the time of filing the bill, and as it is not alleged that this possession was with the consent of the purchaser, we can but regard it as otherwise.— The bill sets out the sale as occurring on the first Monday in January, 1849, and the purchase of the equity of redemption by complainant as happening on the 14th of July of the same year ; and no effort appears to have been made by the complainant to effect the redemption, until the 29th of October, 1850.— Thus, for nearly two years, McNaughton, and complainant under him, withheld the possession of the land from the purchaser, enjoying the rents and profits, without making any effort whatever to entitle themselves to such possession; and without surrendering the possession to the purchaser without suit, so as to entitle them, under the statute, to the privilege of redeeming.— These facts appear upon the face of the bill. At the threshhold the bill is found without equity, so far as the complainant claims through McNaughton, the judgment debtor.

But it is contended, that the fact that the defendant in execution did surrender the premises sold without suit, to the purchaser, need not appear in the bill, and that a failure to deliver such possession is wholly a matter of defence. We do not so regard it. Before the defendant in execution is entitled to redeem, he is required to deliver the possession, without suit, to the purchaser. It is as important that he should do this, as that he should tender the purchase money with the interest required by statute. In fact, *it is necessary to his right*, and whatever is so necessary must be alleged in the bill. The language of the statute, and the equity of such cases, both require that the purchaser should have possession of the lands, that he may enjoy the rents and profits in the meantime, since the sum required to be tendered by the statute embraces only the purchase money with ten per cent. interest, and it could not be tolerated that the defendant in execution should have the rents, when they often amount in value to a much larger sum than the purchase money and the interest required, and almost invariably to a larger amount than the ten per cent. interest.

It is said, however, that the complainant occupies the position of a creditor, and in that character has made out a case for relief. Although this fact is set forth in the bill, yet there are no allegations contained in it which seem to us to seek relief in that capacity. So far as they go, they appear to place the complainant in the relation of assignee of the right of redemption from McNaughton. There is no allegation that the complainant offered to refund to Meade, the purchaser, the sum bid at the sheriff's sale, with ten per cent. interest, and to credit the judgment which he held with an additional ten per cent., or a larger sum. This is required of a creditor by the statute, and an offer to do less will not authorize him to redeem. Nothing short of an offer of all that is required by the statute, will satisfy the demands of the law.—Clay's Digest 502 § 2; Smith v. Anders, 21 Ala. 782.

The views already taken of this case are fully decisive of it, and we deem it unnecessary to consider the other points made in the argument.

Let the decree be affirmed.