# BILLINGSLEA *vs.* WARE.

[BILL IN EQUITY TO OPEN SETTLEMENT OF PARTNERSHIP ACCOUNTS.]

1. *On what grounds equity will open settlement of accounts.*—A settlement of partnership accounts, between parties who dealt with each other at arms'-length, will not be opened in equity on account of the impaired health and depressed spirits of one of the parties, when the evidence is not sufficient to establish his mental unsoundness.

2. *Compromise of settlement bars equitable relief.*—Equity will not open a settlement of partnership accounts, on proof of errors or mistakes, when it appears that the parties dealt with each other at arms'-length, and that the balance struck against the the party complaining was afterwards adjusted by voltary compromise, by which a large deduction was made in his favor.

3. *Mistake in stated account not cognizable in equity when legal remedy is adequate.*—A mistake in calculating the value of land, agreed to be taken, at a specified price per acre, in part payment of the amount due from plaintiff, as adjusted by compromise of a larger balance found due from him on settlement of partnership accounts, constituting in effect a mere over-payment, is no ground for equitable relief, when it appears that his note for the balance of the amount ascertained against him on the compromise is still unpaid.

4. *Relief must conform to allegations and prayer.*—Under a bill seeking to open a settlement of partnership accounts, on the ground of errors, omissions and mistakes, and to cancel a mortgage given by complainant to secure the payment of his note for the balance found against him, and alleging that nothing is justly due from him on a proper accounting, the complainant cannot have a decree for the reformation of the mortgage, nor for the re demption of the mortgaged property.

APPEAL from the Chancery Court at Montgomery. Heard before the Hon. WADE KEYES.

THIS bill was filed by C. C. Billingslea, against Robert J. Ware and Thomas M. Cowles, and sought to open a settlement of partnership accounts between the parties, and to cancel a mortgage given by complainant to secure the payment of his notes for the balance found against him on that settlement. The partnership between the parties was formed in 1834, for the purpose of buying and selling Indian lands on speculation. The settlement was had in July, 1848, and occupied several weeks; the parties being personally present, and also represented by counsel. On that settlement, a balance of $21,000, or

thereabouts, was found against Billingslea; but this balance was reduced, by voluntary compromise between the parties, to $15,000. To secure this latter balance, Billingslea executed his two notes to the other parties, for $2,250 each, secured by a deed of trust on slaves; and for the residue they agreed to take a tract of land from him, which was valued at $15 per acre. The alleged grounds of relief against this settlement were, 1st, complainant's mental incapacity and physical debility at that time, which rendered him unable to properly conduct the settlement on his part, and of which the other parties took undue advantage; and, 2dly, errors and mistakes, to his prejudice, which occurred on the settlement. The record is very voluminous, but the opinion of the court renders a more detailed statement of the facts unnecessary. On final hearing, on pleadings and proof, the chancellor dismissed the bill; holding, that the complainant showed no sufficient reason for setting aside the compromise; and that the partnership books, exhibited by him on notice from the other partners, and which had been kept by him, showed on their face, from mutilations, erasures and interlineations, that he had been tampering with the evidence on which the account depended. The decree of the chancellor is now assigned as error.

N. W. COOKE, and JOHN A. ELMORE, for the appellant. WATTS, JUDGE & JACKSON, and WM. P. CHILTON, contra.

STONE, J.—Conceding that, in July, 1848, the time when the parties had a settlement, Dr. Billingslea was in impaired health, and depressed in spirits; yet the evidence utterly fails to establish any mental unsoundness which can relieve him from responsibility for his acts, or place him in a more favorable attitude for opening those transactions, than if no attempt had been made to prove mental infirmity. The main testimony offered in his favor on this point of contest, is that of Dr. Bradley, Dr. Graham, and Mr. Mitchell. It is opposed by the stubborn facts which occurred during the settlement, as proved by Mr. Welsh, the clerk of their joint choice, and Judge

Mays, at that time the attorney and confidential adviser of Dr. Billingslea. The inference arising from these facts, is fortified and sustained by the testimony of the witnesses Phillips, Stewart, Owen, Wyman, Blue, Belar, Tarrant, Jewett, Wyatt, Fowlkes, and perhaps some others. There can be no doubt that Dr. Billingslea was then sane.—Watts v. Gayle, 20 Ala. R. 817, 826–7, and authorities cited.

[2.] In 1834, a partnership was formed between the complainant and the defendants, for the purchase and sale on speculation of lands known as "Indian reserved lands." Dr. Billingslea was the chief operator, and was also both treasurer and book-keeper. Messrs. Ware and Cowles furnished the capital for the purchases. These purchases yielded a large profit on the investment; and at the close of active operations, there remained some lands undisposed of.

Other companies were also formed, having the same object; and in two or more of these companies, these partners became interested. The interests, however, of the several partners were not always equal. The operations of these companies also yielded profits.

Before the year 1848, Dr. Billingslea and Dr. Ware became unfriendly. In the summer of that year, the partners came together for a settlement; Dr. Billingslea of the one part, and Dr. Ware and Mr. Cowles of the other. An accountant was employed as clerk, and Dr. Billingslea was represented both by himself and by counsel. The work of stating the account, preliminary to a settlement, consumed many days. Their investigations were marked neither by harmony nor confidence. At the close, a balance was stated against Dr. Billingslea, and in favor of Messrs. Ware and Cowles, of about twenty-one thousand dollars. A proposition was then made by Mr. Cowles, to compromise and settle the entire account, if Dr. Billingslea would pay fifteen thousand dollars. Dr. Billingslea accepted the offer, and subsequently Dr. Ware also acceded to the proposition, on the conditions which are found incorporated in the agreement which was then executed by the several parties. That agreement is copied

in the record, and clearly shows that the parties intended to settle finally, so far as Dr. Billingslea was concerned, all matters connected with their land transactions, and to dissolve their said copartnership. Thereupon, Dr. Billingslea paid and secured Messrs. Ware and Cowles the sum which had been agreed on in compromise, and the settlement was regarded as closed. One note of two thousand two hundred and fifty dollars, executed by Billingslea in settlement, and secured by mortgage on slaves with power of sale, remained unpaid when this bill was filed.

The bill in this case alleges that, at the time of the settlement, Dr. Billingslea's mind was not sound, and that advantage was taken of his condition; and he specifies many errors, which he avers were made in the settlement, greatly to his prejudice. The alleged errors range themselves under several classes, among which we mention the following:

1. In omitting to charge Ware with cotton received from Howard, which was charged to no one;

2. In charging large sums to Billingslea which were received by Ware, and should have been charged to him;

3. Important mistakes and errors of statement committed by the clerk in making up the account, preliminary to the settlement—consisting in part of important credits to which Billingslea was entitled, and which he did not obtain;

4. Mistakes of calculation in estimating the agreed value of certain lands, turned over by Billingslea in payment of the balance agreed on in compromise. This 4th item we reserve for after consideration.

The mental condition of Dr. Billingslea we have considered. Nothing further need be said on this point.

We do not propose to inquire into the extent of any errors that may have been committed, of the classes 1, 2 and 3. All those errors preceded the agreement of compromise. That agreement, and the surrounding circumstances, as shown by the testimony, clearly contemplated that there might be errors in the statement of the accounts. The items which come under classes 1 and 2,

had been the subject of protracted disputation and discussion; and according to the testimony, no charge was made against Dr. Billingslea, to which he did not, at the time, give his assent. True, many of the items were never admitted by him to be just; but he gave his assent that they should be charged against him. It is not shown that either of the parties had any knowledge of the errors of calculation into which the clerk was betrayed.

We have, then, this plain state of facts: A protracted settlement was had, at arms'-length, by parties between whom there existed no confidence. No fraud, or undue influence, was practiced *during that settlement*, of which we have any proof. A balance of over twenty-one thousand dollars was found against Dr. Billingslea, and he voluntarily entered into a compromise of all matters connected with the settlement, and by it secured to himself a reduction from his apparent indebtedness of over six thousand dollars.

Compromise is a species of contract; and when it rests on a valuable consideration, it is alike binding with other contracts of corresponding solemnity. The consideration, in this case, is the release to Billingslea of the six thousand dollars.—See Addison on Con. 96; Stewart v. Bradford, 26 Ala. 410. This species of contract cannot be weakened or destroyed, by proof that less was due than the sum agreed to be paid. If such were the case, compromises would lose all their healing properties.

The case of Paris v. Dexter, 15 Verm. 379, was, in its legal bearings, strikingly like the present. The court said: "To grant the relief prayed for, the orator must prove that, at the time he gave the note, he was in such an imbecile state of mind as to be incapable of understanding the nature, effect and extent of the business he was transacting, arising from some temporary cause, or the infirmities of age; or he must show such overreaching and fraud on the part of the defendant, as will make it unconscionable for him to retain it."

In Allis v. Billings, 2 Cush. 19, the court said, "a compromise and settlement, fairly made, of a doubtful claim, are binding on the parties, and are not to be open to fur-

ther controversy."—See, also, 1 Story's Equity, § 131; Hoge v. Hoge, 1 Watts, 163, 217; Mitchell v. Ivey, 5 Litt. 71; Trigg v. Read, 1 Humph. 529; Steele v. White, 2 Paige, 478.

We find in this case no legal ground for opening the compromise.

The mistake or miscalculation in the matter of the payment by Billingslea of the amount agreed to be paid to Ware and Cowles, stands on a different principle. According to our understanding, that mistake occurred under the following circumstances:

Pending the negotiation for a settlement, it was admitted that Dr. Billingslea had an interest in the undisposed-of tract of land, known as the east half of section thirty-one, township eighteen, and range twenty-two, called "the Yarger tract." His interest in that tract was one-third of its value; but, under the contract of partnership, the tract was chargeable in the first instance with the money invested in its purchase. It was agreed by the parties that its value should be fixed at $15 per acre, or the round sum of forty-eight hundred dollars; and that Ware and Cowles would take from Billingslea his interest in the above tract at the above rate, in part payment of what might be found due from Billingslea on settlement.

The parties, Billingslea and Ware, are at issue on the question of interest on this item. The calculation at the time of the settlement, and which is in evidence, shows that interest was allowed for the period of six and a half years; and from this fact we would hold, that interest was to be allowed for the time above stated.

As we understand the facts, *the price* of this land was fixed and agreed on. The sum $742 26, *actually allowed*, was not one of the facts covered by the compromise. A mistake was clearly committed, by subtracting from the agreed value of the "Yarger tract of land," the cost of that particular tract, when the entire cost of all the partnership lands had been previously accounted for. The credit allowed for this item was only $742 26, when it should have been, according to our calculation, $2,432.

This was a mistake, not made in *stating* the account, but

in *paying* the agreed balance; simply an over-payment. In other words, this item of payment was placed $1689 74 below its real amount, thus leaving for after payment that apparent *balance* over the *real* amount. The after payment was, then, an over-payment to the above extent. The question arises, whether this over-payment gives equity to this bill, or has the complainant an adequate remedy at law? In this question is necessarily implied another; namely, does the correction of this error render a re-investigation of the account necessary?

We are satisfied that, if a re-statement of the accounts which preceded the compromise is a necessary pre-requisite to the correction of the error above pointed out, then such re-investigation and re-statement are precluded by the terms of the compromise. We think, however, that the correction does not involve a re-statement of the account proper. No calculation need be re-made, save that which relates to the payment of the agreed balance. We have, then, the simple question of an over-payment by mistake.

Money paid by mistake can be recovered in an action of indebitatus assumpsit. So, if property be paid and received as money, it is regarded as money, and all the incidents of money, as to the forms of legal proceedings, attach to it.—Cameron v. Clarke, 11 Ala. 259, 263; Stewart v. Connor, 9 Ala. 803.

But the principle is, in this case, presented in a still stronger light. Two notes were given to secure the balance of the purchase-money. One of those notes, amounting to two thousand two hundred and fifty dollars, was outstanding and unpaid when this suit was brought. That note, to the amount of the mistake above pointed out, is without consideration; and for this partial failure of consideration, the note is clearly open to defense at law. This fact, then, cannot give equity to the bill.

It is contended for appellant that another item of payment stands in the same category with the one we have been considering. If this be so, it is governed by the same legal principles. We state, however, that after carefully examining the record, we do not find enough in

it to justify us in affirming that there was any other mistake committed, in the act of paying the agreed balance. We cannot discover how the item of $1146 50 was applied; and, inasmuch as there was both a partnership and private settlement, the uncertainty must operate against the complainant.

[4.] If it be contended that the bill can be sustained as one to reform the mortgage or deed of trust, the answer is that there are no averments, nor is there any attempt in the bill, to accomplish this object. If it be further contended, that this bill may be regarded and upheld as one to redeem the mortgaged property, we answer, that the frame and prayer of the bill forbid this. This is a bill to open the entire settlement, and to cancel the mortgage, on allegations that nothing is due; and there is no averment by the complainant of readiness to perform, or tender of the amount due.—Nelson v. Dunn, 15 Ala. R. 502; Paulling v. Meade, 23 Ala. Rep. 505; Spoor v. Phillips, 27 Ala. 193; Johnson v. Culbreath, 19 Ala. 348; Martin's Heirs v. Tenison, 26 Ala. Rep. 738; Shep. Dig. 296, § 6; Equity Draftsman, 317.

In any aspect in which we can view the case, we find no ground for reversing the chancellor's decree. It is therefore affirmed, with costs.