## MOTLEY ET AL. *vs.* MOTLEY.

[BILL IN EQUITY TO SET ASIDE A RECEIPT AND DISCHARGE GIVEN BY THE WARD TO HIS GUARDIAN, ON THE GROUND OF FRAUD, AND TO COMPEL GUARDIAN AND SURETIES TO ACCOUNT WITH THE WARD.]

1. *Guardian and ward, composition of debt between; when will not be set aside.*—Where all the facts of "compromise" between a ward and his insolvent guardian, entered into after the ward has become of age, in reference to the guardian's liability to the ward, are capable of being equally well known to both parties, a receipt in writing given by the ward to the guardian, which is in these words: "Received of T. J. Motley the sum of eight hundred dollars as a compromise and payment in full for all claims against him as guardian;" (and which seems to be fair, as between the guardian and ward alone, without reference to the sureties on the guardian's bond,) will not be set aside and declared void in chancery, so as to enable the ward to reach the sureties on the guardian's bond, by a settlement in the probate court, because the ward failed to know or to inform himself that such sureties were not dead or worthless when the receipt was executed and delivered to the guardian, when the ward has had from seven to eight years to inform himself of all his rights, since he attained his majority.

2. *Same; inadequacy of consideration as affecting.*—In such a case, mere inadequacy of consideration is of no consequence, if the receipt has been given and accepted in good faith.—Rev. Code, §§ 2686, 2687.

3. *Same; what is discharge of sureties as well as of guardian.*—Such a receipt is a full discharge of all the parties on the guardian's bond, and may be pleaded in bar of any decree in the probate court against the guardian on his final settlement.

APPEAL from Chancery Court of Autauga.

Heard before Hon. W. B. WOODS.

THE facts upon which the decision is based are sufficiently stated in the opinion.

WATTS & TROY, and GOLDTHWAITE, RICE & SEMPLE, for appellant.

G. A. NORTHINGTON, *contra.*

[The briefs did not come into the Reporter's hands.]

PETERS, J.—This is a suit in chancery by a ward against his guardian and the sureties on the guardian's bond, to set aside a receipt and discharge given by the ward to his guardian after he became of age, upon the ground of fraud.

The answers of the defendants deny all the allegations of fraud, and demur to the bill for want of equity. The cause was heard upon the bill, exhibits, answers and proof in the court below. The demurrers were overruled, the receipt and discharge were set aside, and the guardian was ordered and decreed to account with his ward for the estate of the ward that had come into his hands. From this decree the guardian and his sureties appeal to this court, and assign the decree of the court below as error.

The bill alleges that Thomas J. Motley was appointed guardian of his brother, Robert Motley, by the probate court of Autauga county, in this State, on December 21, 1857; that he accepted the appointment, gave bond, and undertook the discharge of the duties of guardian under it, until the ward became of age, in September, 1861. It is also alleged that the estate of the ward which came into the possession of the guardian, or for which he was liable to account, was worth, at the filing of the bill, about nine thousand dollars. All the property of the ward was derived directly or indirectly from his father's estate, which was administered by the ward's mother, in the said county of Autauga. The father died in 1846, and left a will, with his widow as his executrix, who made final settlement of her executorship on May 24, 1859. The guardian returned an inventory of the property of the ward received by him. This was done on March 10, 1858. After this, there were no other inventories returned by him, and no annual or other settlements of his ward's estate were made by him. After the return of this inventory, the ward obtained a

Motley et al. v. Motley.

judgment against his mother, as the executrix of his father's will, on May 24, 1859, for $1,806 02. At that time the mother was solvent, and this judgment might have been collected, but no effort was ever made to do so. This judgment was of record in the probate court of Autauga county aforesaid. It also appears that the ward was also entitled to the sum of $2,126 50 on a division of notes for lands sold in 1857. This was also a matter of record in the court of probate in said county of Autauga. Besides these items, it is also alleged that the ward was entitled to some hire of slaves and some rent of lands, and that these demands were based upon matters of record in said probate court. It is further shown, that on the 12th day of July, 1869, between eight and nine years after the ward became of age, he and his guardian made a "compromise" of the claims in favor of the ward, when the latter executed and delivered to the former an instrument in writing, which is in the following language, to-wit:

"SHELBY COUNTY, July 12th, 1869.

Received of T. J. Motley the sum of ($800 00) eight hundred dollars, as a compromise and payment in full for all claims against him as guardian.

ROBERT MOTLEY.

Witness: P. H. Whetstone."

There can be no doubt that this instrument, if it was made in good faith, and procured without fraud by the party in whose favor it was executed, is valid, and must be enforced according to the intention of the parties to it. The instrument explains its own meaning. It was, then, a "compromise and payment in full of all claims" in favor of the ward against the guardian. Such an instrument falls within the provision of the Code, which is in these words: "All receipts, releases and discharges, in writing, whether of a debt of record or a contract under seal or otherwise, must have effect according to the intention of the parties to the same." "All settlements, in writing, made in good faith for the composition of debts, must be taken as evidence, and held to operate according to the intention of the parties, though no release under seal is

given, and no new consideration has passed."—Rev. Code, §§ 2686, 2687.

This was a release of "all claims" in favor of the ward against his guardian. This language is as broad as it can be made.—Coke Litt. 291, b. Such an instrument can not be altered by parol proof. It must stand upon the writing alone.—*Hart v. Freeman*, 42 Ala. 567, 570.

This was, then, not a sale in which the adequacy or inadequacy of the price could be looked to as a badge of fraud, or its absence. It was a receipt and settlement in writing for the composition or compromise of certain pre-existing liabilities, about which both the parties had ample opportunities to learn all the facts. The usual purpose in such a case is to forego the rigid legal rights of the parties, and to accept, in lieu of those, something else, or something less than the thing itself is nominally worth. It is a composition, not a sale, or a full payment. In such a transaction, good faith is the ruling element. The consideration may be great, or small, or merely nominal, as the parties choose to make it.—*Kirby v. Taylor*, 6 John. ch. 242, 247; *Billingslea v. Ware*, 32 Ala. 415, 419. The statute gives the receipt the force of a defeasance at common law which was of a technical character and required to be under seal and executed at the same time with the instrument creating the obligation.—*Fowel v. Forrest*, 2 Saund. 48, case No. 6; *Freeman v. Baldwin*, 13 Ala. 246.

Then, were the allegations of fraud in the bill, so far as they are admitted or sustained by proof, sufficient to show bad faith on the part of the guardian in this instance? I think not. The transaction was between brothers. It was an affair of long standing. It had been a subject of conversation between the brothers once at least, if not oftener, before its final settlement. The ward was a man of mature age, between twenty-seven and twenty-eight years old when he executed the receipt. There is no pretense or allegation that he was not at that time a person of sound sense, or capable of attending to his own affairs, or that he was in any degree under the control or domination of his older brother, who had been his guardian. One of the debts constituting a considerable portion of the ward's es-

tate, was a debt due from the ward's mother.  And another was one on which the guardian himself had been the surety for its payment.  Both these debts had been lost by the insolvency of the parties, occasioned by the results of the late war.  It does not appear that the guardian had used any of the ward's estate for his own profit.  It was quite as much the misfortune of the guardian as it was his fault that the ward's property under his control had been lost. And, as between the brothers themselves, without looking beyond, to the sureties on the guardian's bond, the composition was a fair one.  It was quite as much, and possibly more, than the guardian, without assistance, was able to pay.  And this was well known to the ward.

Besides this, the principal items of the ward's estate were matters of record in the probate court of Autauga county, where he had formerly resided, and which were easily accessible to him.  This had been the case for above eight years after he had attained his majority.  He had also engaged the services of an attorney to examine into his claims against his guardian for him, some five or six months before the execution of the foregoing receipt.  It does not appear that the guardian interposed any obstacle or hindrance to such examination, or that he was in any way opposed to it.  It also appears that on one occasion the ward was willing to release his brother for a sum not larger than that finally accepted, but the brother was unable to pay it.

Under such a state of facts as this the receipt was executed.

It is now insisted that this receipt ought to be declared void, because it was fraudulently obtained; that is, obtained in bad faith.

To support this proposition, it is alleged that the guardian did not, at any time, render his ward any account, or make known to him the condition of his estate, or render him any account of receipts and disbursements as his said guardian; and that at the time said receipt was executed, the ward was entirely ignorant of the amount and condition of the assets held by his late guardian, and that he signed said receipt in ignorance of his rights.

These allegations are exceedingly loose. They may all be true, and yet not be the fault of the guardian. The ward's ignorance might have been due to his own gross negligence, and not in any wise to the connivance of the guardian. If he chose to act upon insufficient information when better was within his reach, it is his own fault. This does not show bad faith in the guardian. He was not asked to furnish accounts of receipts and disbursements, and it does not appear that he refused any information that was requested of him. His opinion of the amount of his liability was easily corrected, if the ward did not feel content to act upon it. It seems that he was willing to admit more even than the ward was willing to exact. In the seventeenth paragraph of the bill, the ward shows that the guardian admitted that he owed him "sixteen hundred dollars," and "appealed" to him "to take eight hundred dollars in full satisfaction of the same, alleging that he was insolvent, and that one of his securities was dead, and the others were worthless, and that orator (ward) would have to look to him (guardian) alone for payment." Upon this statement, the compromise was made, and the receipt was given. This shows that the compromise with the brother, who was the guardian, so far as he was individually concerned, was satisfactory at the sum of eight hundred dollars, whatever might have been the amount of his liabilities. But it is alleged that the representation in reference to the sureties was not true; that one of them at least was a man of wealth, and able to respond to the whole amount of the penalty of the guardian's bond, which was thirty thousand dollars. When this was discovered, the ward became unwilling to abide by the purpose of the receipt.

The above obligation in reference to the sureties on the guardian's bond is overturned both by the answers and the proofs on the part of the defendants below. The cause stands, then, as though it were stricken from the bill. If this allegation were stricken from the bill, it clearly appears that the ward has obtained what he was willing to accept as the price of his brother's discharge. And his brother's discharge was the release of all the sureties on

his guardian's bond.—*Kirby v. Taylor*, 6 Johns. 242, *supra ; Johnson v. Flint*, 34 Ala. 673.

This view of the pleadings and proofs turns the bill rather against the solvent sureties on the guardian's bond, than against the principal, who is the guardian. They are wholly innocent parties, and an equity which is invoked to their injury should "rest upon the clearest allegation of facts, and these facts should be shown by satisfactory evidence. A mere inference is not enough to establish a fraud for which they have to suffer. A party, in such a case, must be vigilant to know his rights before he acts upon them, else he will not be heard to complain that he has acted in ignorance of his rights. In such a case, the maxim, *vigilantibus et non dormientibus jura subveniunt,* peculiarly applies.—Broom's Max. 391, 392 ; 2 Just. 690.

The appellee has not brought his case, which he has been able to sustain by his proofs, within the protection of the principles of this maxim. The cause must, therefore, be reversed ; and a decree will be here rendered dismissing the bill.

No notice is taken of the action of the court below on the demurrers or the pleas. The bill is so diffusely and inartificially drawn, that it is somewhat difficult to arrive at a clear perception of the facts on which its equity is intended to be placed. Undoubtedly, if there was fraud or bad faith in procuring the receipt, a court of chancery may interpose ; because fraud is one of the original grounds of jurisdiction in a court of chancery.—1 Story Eq. §§ 68, 185 ; *Kennedy v. Kennedy*, 2 Ala. 571. And at the same time, if the receipt was void on account of fraud, this is a defense that might have been set up in the probate court. Fraud-in fact, is a defense at law, as well as in equity.—1 Story Eq. § 184; *Jackson v. Bargott*, 10 Johns. 457. It has already been shown that inadequacy of consideration, in such a case as this, is not a badge of fraud, as it may be under other circumstances. Nor is it necessarily fraudulent for a party to fail to communicate facts which are not asked for, that may be, upon diligent enquiry, as well known to the other as to himself.—*Alabama Life and Trust Company v. Pettway*, 24 Ala. 544. For these reasons, we leave the ques-

tion raised upon the de murrers for further discussion and future settlement, repeating at the same time, "that such is the solictude of courts of equity to suppress fraud, that they will not undertake to enumerate the cases of which, upon suggestion of fraud, they will take jurisdiction.—*Kennedy v. Kennedy, supra.*

Let the judgment of the court below be reversed, and this court, proceeding to render such decree in the case as should have been rendered in the court below, doth order; adjudge, and decree, that the bill in this case be dismissed, and that the complainant in the court below, said Robert Motley, the appellee in this court, pay the costs in this court and in the court below.

NOTE BY THE REPORTER.—After the delivery of the foregoing opinion, the appellee applied for a rehearing, to which the following response was made by—

PETERS, J.—The rehearing in this case must be denied. The evidence does not sustain the allegations of fraud, and without this the decree of the court below cannot be sustained. In such a case as this, where the object of the parties was the composition of a debt or claim, the smallness of the consideration is not necessarily evidence of fraud or deception. The bill is based as much upon the the negligence of the complainant as the assumed fraud of the defendants. Relief will not be given on such grounds. *Garrett v. Lynch, Adm'r,* at the present term, 1871; Rev Code, §§ 2685, 2686.

The rehearing is denied, with costs.