# Troy, Adm'r, *v.* Bland.

## *Money had and received.*

1. *Compromise, money paid on; when can not be recovered back.*—Money paid in compromise of a doubtful or disputed claim, cannot be recovered back by action for money had and received. Thus, where a judgment creditor, having an execution levied on his debtor's land, in May, 1870 (after the decision of *Hepburn v. Griswold*, 8 Wall. 603, which held the legal tender acts of Congress not applicable to existing contracts), instructed the clerk and sheriff to receive nothing but gold and silver, or its equivalent, in satisfaction of the debt, and refused to receive legal tender notes except at 15 per cent. discount, which was then the premium on gold, and which the defendant refused to pay, but offered to pay them at 10 per cent. discount, which offer the plaintiff finally accepted. *Held*,

That the premium paid could not be recovered, after the overruling of *Hepburn v. Griswold*.

APPEAL from the Circuit Court of Dallas.
Tried before Hon. GEORGE H. CRAIG.

The opinion states the facts.

[Troy, Adm'r, v. Bland.]

PETTUS, DAWSON & TILLMAN, for appellant.—The money was paid° in compromise of a doubtful claim, and it cannot be recovered back. The appellee had full knowledge of the facts, and no fraud or imposition was practiced on him. No matter how mistaken he may have been as to his rights under the law, he cannot recover back the money paid and received in compromise of what was considered a doubtful right.—34 Ala. 400. To render valid the compromise of a litigation, it is not necessary that the question in dispute should really be doubtful, if the parties *bona fide* consider it to be so. It is enough to render the compromise valid that there be a question to be decided between them. A compromise of a doubtful right will not be set aside on any other ground than fraud.—Kerr on Fraud and Mistake, 403 ; 1 Atk. 10 ; 2 Ba. & Be. 179; 18 Beav. 87 ; 9 How. 55 ; 15 Ala. 149; 1 Allen, 279 ; 11 Vt. 483 ; 4 Met. 270 ; 5 Watts, 259 ; 1 Jones Eq. 313.

MORGAN, LAPSLEY & NELSON, *contra.*—The sole question in this case is, whether or not the payment of the premium was voluntary or not ; we insist that the facts of this case show that the payment made was involuntary. Money paid under execution cannot be said to be a voluntary payment, and where the demand was illegal it can be recovered back in this form of action. This subject is elaborately discussed in *Town Council of Cahaba v. Burnett,* 34 Ala. 407 ; and in that case it is expressly stated that *money paid upon an execution can be recovered.*—See, also, *Ewing v. Peck,* 26 Ala. 414 ; *Williams v. Simmons,* 22 Ala. 425 ; *Cocke v. Porter's Executors,* 2 Humph. (Tenn.) 15 ; Chitty on Con, 551, and cases cited in notes.

The testimony shows a tender in *U. S. legal tender notes.* The defendant's intestate, and her attorney, had no right to demand anything more.—*Munter v. Rogers,* 50 Ala. 284 ; *Brassell v. McLemore,* 50 Ala. 476 ; *Dooley v. Smith,* 13 Wall. 604 ; *Railroad Co. v. Johnson,* 13 Wall. 195.

STONE, J.—The present action was instituted to recover back money paid May 10th, 1870, on the ground that it was paid involuntarily, in excess of what was due. Appellant's intestate had, in 1867, recovered judgments against the appellee for over ten thousand dollars, on debts contracted in 1858. Executions for the collection of these judgments were in the hands of the coroner acting as sheriff, and had been levied on lands of the defendant, which were about to be advertised and sold. Plaintiff's attorney had endorsed on the executions, pursuant to instructions, that "the clerk and

sheriff are required to receive in satisfaction of the damages in this case, nothing but gold and silver, or its equivalent." The defendant, Bland, tendered the amount of the judgments, interest and costs, in legal tender United States treasury notes, in full payment of the executions, which plaintiff's attorney declined to accept. He offered to take the notes tendered at 15 per cent. discount. Gold coin was then worth 15 per cent. premium; silver coin 10 per cent. The defendant refused to accede to these terms. After some negotiation and altercation, the defendant proposed to pay in U. S. treasury notes at 10 per cent. discount. Plaintiff's attorney, after conferring with his client, agreed to accept, and did accept this sum in full satisfaction.

When this demand of specie was made, and when the settlement took place—May 10th, 1870—the ruling of the Supreme Court of the United States—*Hepburn v. Griswold*, 8 Wal. 603—was, by all persons considered the law of the land. In that case it was declared, "that an act making mere promises to pay dollars a legal tender in payment of debts previously contracted is not a means appropriate, plainly adapted, really calculated to carry into effect any express power vested in Congress; that such an act is inconsistent with the spirit of the constitution; and that it is prohibited by the constitution." If that decision was law, appellant's intestate was entitled to demand and receive specie in payment of her judgments. Later—in December, 1870—the "legal tender cases" were decided by the Supreme Court of the United States.—See 12 Wal. 457. The court then overruled the decision in *Hepburn v. Griswold, supra*, and ruled that the acts of congress, known as the legal tender acts, are constitutional, when applied to contracts made before their passage. The legal tender statutes were enacted in 1862 and 1863.

We stated above that at the time this settlement was made—May 10th, 1870—the premium on gold was 15 per cent., and on silver 10 per cent. Under the act of congress, approved January 18, 1837, the weight of the silver half dollar was fixed at 206¼ grains, and all other silver coins in that proportion. These were declared to be a legal tender in the payment of debts, without reference to their amount. On the 21st of February, 1853 (10 Stat. at Large, 160), congress, by the "act amendatory of existing laws relative to the half dollar, quarter dollar, dime, and half dime," debased these silver coins, by reducing the weight of the half dollar to 192 grains, and other silver coins, beneath that denomination, in the same ratio. The statute then declared that the silver coins issued in conformity with this statute "should be legal

tenders in payment of debts for all sums not exceeding five dollars." The act of congress of February 12, 1873 (17 Stat. at Large, 427), after again changing the weight of the several silver coins, declared that none of them should be a legal tender "for any amount exceeding five dollars in any one payment." The act of congress of 1853, reducing the weight of all our silver coins except dollars, may account for the difference in premium, in 1870, on gold and silver coins. It is within recollection that after 1853, few silver *dollars* of American coinage, were in circulation. Most of the silver coins, then in use, were of the denominations of half dollars and under.

In *Billingslea v. Ware,* 32 Ala. 415, this court said: "Compromise is a species of contract; and when it rests on a valuable consideration, it is alike binding with other contracts of corresponding solemnity. . . This species of contract can not be weakened or destroyed by proof that less was due than the sum agreed to be paid. If such were the case, compromises would lose all their healing properties."·

In *Stapilton v. Stapilton,* 1 Atk. 2, 10, it was said, "that an agreement entered into upon a supposition of a right, or of a doubtful right, though it after comes out that the right was on the other side, shall be binding, and the right shall not prevail against the agreement of the parties, for the right must always be on one side or the other; and, therefore, the compromise of a doubtful right, is a sufficient foundation of an agreement."

In 2 Ball & Beatty—*Leonard v. Leonard*—the Lord Chancellor said, "if the validity of a deed of compromise is to depend upon a subsequent decision on those rights, which were the subject of the agreement, no disputed or disputable title could be compromised."

In *Pickering v. Pickering,* 2 Beav. 31, 56, Lord Langdale said, "when parties, whose rights are questionable, have equal knowledge of facts, and equal means of ascertaining what their rights really are, and they fairly endeavor to settle their claims among themselves, every court must feel disposed to support the conclusions or agreements to which they may fairly come at the time; and that, notwithstanding the subsequent discovery of some common error."

In *Stewart v. Stewart,* 6 Clark & Finlay, 911, 968, Lord Ch. Cottenham, delivering the opinion of the court, quoting from Lord Alvanley, said: "If parties will, with full knowledge (of doubts and difficulties as to their rights), act upon them, though it turns out that one gains a great advantage, if the agreement was fair and reasonable at the time, it shall be binding." And he adds: "There was a case before the

[Troy, Adm'r, v. Bland.]

lord chancellor, in which it was held that the court will enforce such an agreement, although it turns out that the parties were mistaken in point of law, even supposing counsel's opinion was wrong."

In *Durham v. Wadlington*, 2 Strob. Eq. 258, the court decided that, "when a compromise of a doubtful right is fairly made between the parties, whether the uncertainty rests upon a doubt of fact, or a doubt in point of law, if both parties are in the same ignorance, the compromise is equally binding, and can not be affected by any subsequent investigation and result."

In *McKinley v. Watkins*, 13 Ill. 140, the compromise was made and the money paid under a threat of suit; and the same doctrine was declared. To the same effect are *Logan v. Mathews*, 6 Penn. St. 417; *Good v. Herr*, 7 Watts & Serg. 253; *Brandon v. Medley*, 1 Jones Eq. 313.

We consider it unnecessary to make a further collation of authorities. The doctrine is fully sustained by the following numerous cases, for the careful collection of which we are indebted to counsel for appellant : *Naylor v. Winch*, 1 Sim. & Stu. 555; *Haney v. Cooke*, 4 Russ. 34; *Lawton v. Campion*, 18 Beav. 87; *Russell v. Sprye*, 8 Hare, 222; *Kerr v. Lucas*, 1 Allen, 279; *Leach v. Fobes*, 11 Gray, 507; *Sargent v. Larned*, 2 Con. 340; *Payne v. Bennett*, 2 Watts, 427; S. C. 5 Watts, 259; *Moore v. Fitzwater*, 2 Rand. 442; *Zane v. Zane*, 6 Munf. 406; *Perkins v. Gay*, 3 Sug. & R. 327; *Weed v. Terry*, 2 Doug. (Mich.) 344; *Blake v. Peck*, 11 Verm. 483; *Barlow v. Ocean Ins. Co.*, 4 Metc. (Mass.) 270; *Williams v. Alexander*, 4 Ire Eq. 207; *Carlisle v. Barker*, at December, 1876.

There must, however, be no misrepresentation or concealment of facts, by either party, to mislead the other.—See authorities above, and *Wheeler v. Smith*, 9 How. U. S. 55.

In the present case there was no misrepresentation or concealment. The decision in *Hepburn v. Griswold* was the authority for all that was represented, and it fully justified it. If Bland had consulted counsel, he would have been informed that plaintiff could compel him to pay in coin that was a legal tender. Such would have been the counsel, at that time, of any well informed lawyer. Chief Justice Chase was the author of the first legal tender act, and Chief Justice Chase delivered the opinion in *Hepburn v. Griswold*, which pronounced it unconstitutional as to debts previously contracted. Hence, at that time, it can scarcely be said there was a doubt of Bland's liability to pay in specie. If he had desired to controvert his liability to pay in coin, he could have paid, or tendered in legal tender treasury notes, the amount of the judgments, interest and costs, and tested

his further liability, by proceedings in supersedeas. This he did not do. The plaintiff demanded coin, or treasury notes, with fifteen per cent. added—the premium on gold. The defendant offered treasury notes and ten per cent. added. This, after obtaining authority from his client, was accepted by the attorney. This settlement has all the qualities of a compromise of a doubtful or disputed claim, under the rule declared above, and the money can not be recovered back.

It is unnecessary to notice the other questions argued. What we have said will furnish a sufficient guide on another trial.

Reversed and remanded.